**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Neil GALLAGHER, Defendant-Appellant.**
**No. 17937.**

United States Court of Appeals,
Seventh Circuit.

Feb. 11, 1971.

Rehearing Denied March 16, 1971.

Frederick F. Cohn, Julius Lucius Echeles, Harvey J. Powers, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Michael D. Marrs, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

CASTLE, Senior Circuit Judge.

The defendant-appellant, Neil Gallagher, was convicted of conspiracy[1] to violate 18 U.S.C.A. § 1343. The conspiracy offense was charged in Count VIII, the last count, of an indictment naming the defendant-appellant and his brother, Thomas Gallagher, as defendants. The first seven counts of the indictment charged both of the defendants with substantive offenses—the use of interstate telephone communication on seven specific occasions in furtherance of a scheme to defraud—in violation of 18 U.S.C.A. § 1343.[2] The case was tried to a jury which found the defendant, Thomas Gallagher, guilty on all of the counts of the indictment; acquitted appellant, Neil Gallagher, on the seven substantive counts, but found him guilty on the conspiracy count. The appellant, Neil Gallagher, was sentenced to five years imprisonment and fined $1000.[3]

Neil Gallagher, in his appeal, predicates the existence of error requiring a reversal on (1) insufficiency of the evidence to sustain his conviction of the conspiracy charged; (2) the District Court's denial of his motion for a mistrial, and its failure to order a severance; and (3) improper restriction of cross-examination.

The scheme to defraud, as described in the indictment, involved the use of stolen, spurious or fraudulently embossed American Express Company credit cards by the defendants for the purchase of airline tickets which were then sold at a substantial discount under a false representation that defendants could obtain such tickets at a discount of approximately fifty percent.

The record discloses that there is direct evidence in the form of testimony of Fred Foster, a government witness, of Thomas Gallagher's use of interstate telephone communication on the dates specified in the indictment in connection with the sale of airline tickets at a substantial discount to Foster. Other evidence establishes beyond question that these tickets were obtained through the use of a stolen or otherwise misappropriated American Express Company credit card and thereafter delivered to Foster who turned them over to an airline investigator. Foster also testified that in answer to an inquiry he made concerning Neil Gallagher, Thomas Gallagher told the witness that Neil was his brother and was in charge of Thomas' New York operation. And Lois Seaver, who is named as an unindicted co-conspirator in Count VIII of the indictment, testified that she was employed by Thomas Gallagher to take various credit cards along with signed vouchers to pick up tickets at the "will call" desks of airline offices and then deliver the tickets

---

1. A violation of 18 U.S.C.A. § 371.

2. § 1343 provides: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be

fined not more than $1000 or imprisoned not more than five years, or both."

3. Defendant Thomas Gallagher was sentenced to five years imprisonment on each count, the sentences to run concurrently, and fined $1000 on each count, the fines to be cumulative. The defendants filed a joint notice of appeal, but Thomas Gallagher filed a motion in this Court, prior to oral argument herein, to withdraw his appeal. That motion was allowed on August 10, 1970 by a three-judge panel of this Court.

to Thomas Gallagher. This witness stated that on one occasion when she so presented an American Express Company credit card and was advised by the airline employee that the card had been altered, and that it would be necessary to call New York to check on the card, she excused herself on the pretext of using the washroom while the call was being made, left the building, and reported to Thomas Gallagher that she had lost the credit card.

The appellant points to the fact that he was acquitted on the substantive counts relating to the interstate telephone communications with Foster, and argues that there is a total absence of any relevant or legal evidence which serves to connect him with his brother, Thomas Gallagher, in engaging in any of the substantive acts—the interstate telephone calls made in furtherance of the alleged scheme to defraud—and, consequently, the evidence is insufficient to sustain his conviction for conspiracy. In support of this argument the appellant urges that the testimony above summarized, in so far as it contains any reference to him, constituted inadmissible hearsay as to him under the rule that declarations of one conspirator in furtherance of the objects of the conspiracy made to a third party are admissible against an alleged co-conspirator only if there is proof, independent of such declaration, that the alleged co-conspirator is connected with the conspiracy.

The flaw in appellant's argument which makes it inapposite is that here the record discloses that there is independent evidence of appellant's connection with the conspiracy which serves to make the declarations of his brother Thomas to Foster admissible against appellant. In this connection Jack Seaver, the husband of Lois Seaver, testified that in a conversation he had with Neil and Thomas Gallagher, Neil berated Lois Seaver for having lost a credit card that Neil could have sold in New York. Neil added: "I am going to New York. I could have got rid of that card". In addition, Bert Poppeliers, who at

the time to which he made reference was employed as controller at a Chicago hotel, testified that on two occasions he had conversations with the appellant in which the appellant stated he was going to New York to deliver a package of ten credit cards which he had received from Thomas Gallagher, that when he delivered these American Express Company credit cards he would collect the money to be paid for them, and that he would be reimbursed a certain amount. In the second conversation, which occurred about a week after the first, appellant stated that he had not yet made the New York trip to deliver the credit cards; he further stated that he used American Express Company credit cards to obtain tickets at the airport in New York in the same manner in which tickets were obtained by Thomas Gallagher in Chicago. The conversation took place in the hotel's cocktail lounge where the witness and the appellant were having drinks.

We conclude, on this phase of the appeal, that considering the evidence in the light most favorable to the government (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680) the verdict of the jury is substantially supported by the record.

At the trial both defendants were represented by the same counsel. He entered the case as retained counsel some two and one-half months before the trial. Prior thereto the appellant had been represented by separate court-appointed counsel who had been appointed before appellant's arraignment. Before the cross-examination of the government's second witness, Fred Foster, trial counsel for the defendants made an oral motion for a mistrial. The basis for this motion was that counsel's appraisal of the evidence which had been adduced up to that point, viewing it in the light of the court's rulings with respect to what evidence, at that stage, was to be considered against only one of the defendants and what was to be considered against both, was that the evidence bore more heavily against Thomas Gallagher

than against the appellant and presented counsel with a question as to the manner in which he should cross-examine Foster. That he didn't know, "whether I should let Tom Gallagher go at this time and concentrate on the lack of evidence against Neil Gallagher or whether I should concentrate on the [evidence] against Neil and pound that in front of the jury". After the trial judge commented that the customary manner of presenting the evidence in a conspiracy case was being followed, counsel for defendants added that the evidence seemed to support his surmise that there was a potential conflict in interest between his clients. The District Court denied the motion for mistrial, inquired if counsel desired to make any other motion, and was advised that counsel had none to make at that time.

After the government concluded its case, and motions for acquittals were denied, the defendants rested their case without presenting evidence. On the next morning counsel for defendants advised the court that appellant wanted the case to be reopened so that he could take the stand and testify, but that defendant Thomas Gallagher opposed any reopening of the case. Before any ruling was made by the court, appellant collapsed and by agreement of the parties the trial was continued to the following Monday morning. When the trial resumed the appellant withdrew his motion that the case be reopened to permit him to testify.

 Appellant contends that he was denied his Sixth Amendment right to effective assistance of counsel because a conflict of interest existed between the defendants which precluded their representation by the same counsel, and that, consequently, the District Court's failure to grant the motion for a mistrial and order a severance constituted reversible error.[4] We disagree. The mere fact

that the evidence against appellant's co-defendant, Thomas Gallagher, is stronger than that against the appellant does not indicate, much less demonstrate, the existence of a conflict of interest between the defendants. On the record before us, it indicates only that Thomas Gallagher apparently was the dominant member of the conspiracy and played a more prominent role in carrying out the illegal activities involved. That a difference in the weight of the evidence against co-defendants may cause trial counsel to speculate as to the trial strategy he should employ in the cross-examination of a witness, likewise, does not of itself serve to establish that counsel is unable to effectively represent both defendants. Nor does the fact that one of the co-defendants expressed a desire to testify, which he promptly withdrew at the first opportunity. The existence of a conflict of interest, to warrant the result here sought, must be founded on something more than mere speculation or surmise. We perceive nothing in this record which demonstrates the existence of any real conflict of interest between the defendants. And counsel had ample opportunity to make such a showing if such conflict existed.

 The appellant's complaint that he was unduly restricted in cross-examination is based solely on the court's ruling sustaining a government objection to one question trial counsel for the defendants asked of witness Poppeliers. The witness on direct examination had testified with respect to a conversation, mentioned earlier in this opinion, between the witness and the appellant, Neil Gallagher, which Poppeliers stated took place in the cocktail lounge of the hotel where he was then employed. In such conversation, as related by the witness on direct examination, appellant had stated that he was going to New York to deliver ten American Express Company credit cards for Thomas Gal-

4. Although no express motion or request for a severance was made, it would seem that if a conflict of interest between de- fendants required the declaration of a mistrial a severance also would have been required.

lagher, and that he used such credit cards to obtain airline tickets in New York in the same manner as Thomas Gallagher did in Chicago. With reference to the occasion of this conversation, the witness was asked on cross-examination if on the basis of his business experience and "expertise" would he say that Neil Gallagher was intoxicated. The government objected and was sustained. The appellant contends that the jury had a right to know the answer to the question in order to judge whether the content of the conversation was "straight talk from Neil—or drunken puffing". But apart from consideration of the relevance of the question, the District Court was correct in its ruling. The form in which the question was put sought to elicit an opinion of the witness based on his assumed "expertise". But, whether another person was intoxicated at a particular time or place is a subject upon which the ordinary witness may testify— the opinion of such a witness is admissible. 32 C.J.S. Evidence § 546(27) ; Jones on Evidence, 5th Ed. § 405 (Vol. 2, p. 757, fnt. 4). This being so, expert opinion is not ordinarily admissible—the subject being one within the knowlege of all men of common education and experience. Special skill or "expertise" does not entitle a witness to give an expert opinion if the subject is one where the opinion of an ordinary observer is admissible or where the jury is capable of forming its own conclusions from facts which are susceptible of proof in common form. 32 C.J.S. Evidence § 546(62) ; Jones on Evidence, 5th Ed. § 403. The expert opinion here sought to be elicited from the witness was clearly inadmissible. There was no attempt by trial counsel to rephrase the question or pursue the line of questioning in a proper manner. Appellant's contention that he was unduly restricted in his cross-examination is wholly without merit.

The judgment order of conviction and sentence from which appellant appeals is affirmed.

Affirmed.