**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carl FIORITO, Defendant-Appellant.**

**No. 73–1617.**

United States Court of Appeals,
Seventh Circuit.

Heard April 1, 1974.

Decided June 28, 1974.

Ronald P. Alwin, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Walter Jones, Jr., Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

In November 1971, a 15-count indictment [1] was returned against eleven persons alleging narcotic offenses in violation of what was then 21 U.S.C. § 174. Appellant Carl Fiorito was named only in the first count, which charged him and the ten co-defendants with violating the conspiracy portion of said statute. The grand jury alleged that the eleven defendants conspired "to receive, conceal, buy, sell and facilitate the transportation, concealment and sale of narcotic drugs after being unlawfully imported and brought into the United States, knowing the same to have been imported and brought into the United States contrary to law." Parts of the conspiracy charged were that the defendants would unlawfully procure quantities of heroin and then sell and distribute it in the Northern District of Illinois, while concealing "the purpose of and the acts done in furtherance of the conspiracy." Six overt acts were specifically alleged in Count I. Fiorito was named only in the sixth, which read as follows:

"On or about February 15, 1971, defendant Fred Coduto had a telephone conversation with defendant Carl Fiorito in the Northern District of Illinois, Eastern Division."

After alleging that overt act, the indictment realleged each allegation in the remaining Counts as an overt act under Count I. Fiorito's name does not appear in the balance of the indictment.

For various reasons immaterial to Fiorito's appeal, the case against each of the co-defendants was resolved before and during trial, and he proceeded to verdict alone.

The February 15, 1971, telephone conversation between Fiorito and Coduto specified in Count I of the indictment as overt act 6 was obtained through a wire-tap on Coduto's phone. The transcript of that conversation was as follows:

"FRED CODUTO: Hello.

CARL FIORITO: What do you say, Diavolo?

FRED CODUTO: What's happening?

CARL FIORITO: Not much.

FRED CODUTO: Yah.

CARL FIORITO: Did you do any good, like the last time?

FRED CODUTO: No, I, Madonna —I saw you Saturday.

CARL FIORITO: Yah, I know.

FRED CODUTO: You know, over there.

CARL FIORITO: Yah.

1. On November 1, 1972, Count XV of the indictment was dismissed on motion of the Government.

108

FRED CODUTO: And, uh, well that guy did he tell you.

CARL FIORITO: No, he told me there's a lot of trouble.

FRED CODUTO: Well, ah, their just looking for me, ah, I had to go into court a couple of weeks ago.

CARL FIORITO: Yah you?

FRED CODUTO: Yah.

CARL FIORITO: For what?

FRED CODUTO: Ah. They nailed me—they wanted to nail me for that fine again. And I had to hire a lawyer to go in, and . . . we got it all straightened out. We got the time straightened out, everything.

CARL FIORITO: Hmm, huh.

FRED CODUTO: They wanted to add four hundred and, ah seventeen more days. They wanted to hire, ah, they wanted to nail me for the fine.

\* \* \*

CARL FIORITO: I didn't know that. I know that's the first time I heard that?

FRED CODUTO: Yah.

CARL FIORITO: How about that other thing. The one, you know that, the last time I saw you.

FRED CODUTO: Nothing, I, I, doing, I know nothing. Carl, they're like bees. [According to the Government, this may refer to narcotics agents.]

CARL FIORITO: Huh?

FRED CODUTO: They're like a bunch of bees.

CARL FIORITO: Yah?

FRED CODUTO: Yah.

CARL FIORITO: You can avoid that.

FRED CODUTO: Might as well just cool it and leave it. You know. About that, but that other guy ain't got nothing anyway. Nobody's got nothing.

CARL FIORITO: No just, huh?

FRED CODUTO: No, if, ah, anything happens I'll get in touch with ya.

CARL FIORITO: Alright.

FRED CODUTO: It should be about a week or ten days. I don't know.

CARL FIORITO: Okay, take it easy.

FRED CODUTO: Okay.

CARL FIORITO: Alright, I'll see you then, Hey."

The only other evidence relating to Fiorito was contained in informer Paul Moore's testimony about his January 13, 1971, and January 24, 1971, conversations with Coduto at a River Forest, Illinois, restaurant. The testimony as to the pertinent part of the first conversation was as follows:

"Fred Coduto said, 'How do you like my stuff?' I said, 'It's good. No doubt about it. It is the best we've ever bought.' He said, 'You are making more off of mine than Fiorito's aren't you?' I said, 'I never said I was dealing with him.' He said, 'Yeah, Carl on the North Side.' I said, 'Well, it is true that we are making more off of your stuff than anybody else's.' He said, 'Well, it is not all Fiorito's fault. He cuts the stuff with sugar and screws it up a lot of times, but we actually got the same source, the same guy.' He said, 'And sometimes if our guy doesn't have stuff I will duke [supply] him myself.' And, Coduto said, 'Sometimes the source will screw Fiorito because he is not too sharp. He doesn't know what he is getting. But when we go into buy our stuff we go in with $150,000 to $200,000 at a crack. So, our guy wouldn't screw us. Besides, we would go over and pick him up and bring him over here and chop his head off if he did that to us. He can't do that to us.' "

The pertinent part of the January 24 Moore-Coduto conversation at the same restaurant was related by Moore as follows:

"I told Fred Coduto, 'It is not a very good idea with all this heat for you to be duking Carl on the North Side.'

He said, 'Who? Me?' I said, 'Yeah. Last week you said you were duking him.' He said, 'Only small stuff.' "

Two other conversations between Coduto and Moore but not mentioning Fiorito are relied upon by the Government to explain the February 15 conversation between Fiorito and Coduto, charged as overt act 6. During a January 1 conversation at Jim and Pete's Restaurant in River Forest, Coduto told Moore, "I am feeling heat. They [perhaps narcotics agents, the Government suggests] are swarming all around me. I don't know what to do." This was in the context of a discussion of narcotics transactions between Moore and Coduto. During a February 22 conversation at the same restaurant, Moore and Coduto agreed to meet the following evening at 7:30 p. m. at the Paddle Wheel Restaurant, also in River Forest, where Coduto would sell Moore 1 kilogram of heroin. Coduto told Moore that he could order all he wanted because, Coduto said, "I am getting a big order in, about 10 kis, within the week." Moore said that one kilo would suffice. No sale took place on February 23 because four of the defendants were arrested that day. Fiorito was arrested several days later.

The jury found Fiorito guilty under Count I. He was given a 12-year sentence, with recommendation that he be placed on probation for the last two years. This appeal followed. We reverse.

Fiorito's principal argument is that there was insufficient evidence to establish that he joined the conspiracy charged in Count I. At the oral argument, counsel for the Government was candid enough to admit that its "evidence is indeed thin." We conclude that the evidence is too thin for affirmance.

 In a conspiracy case, it is axiomatic that declarations of a co-conspirator may not be admitted in evidence against a defendant unless there is independent evidence establishing his participation in the conspiracy. Glasser v. United States, 315 U.S. 60, 74–75, 62 S.

Ct. 457, 86 L.Ed. 680; United States v. Cerone, 452 F.2d 274, 283 (7th Cir. 1971), certiorari denied, 405 U.S. 964, 92 S.Ct. 1169, 31 L.Ed.2d 240; United States v. Gallagher, 437 F.2d 1191 (7th Cir. 1971), relied on by the trial judge, did not purport to change this rule. There Judge Castle cited appellant's own statements as "independent evidence of appellant's connection with the conspiracy which serves to make the declarations of his brother Thomas to Foster admissible against appellant." 437 F.2d at 1193. Consequently, hearsay conversations between Coduto and Moore cannot be admitted into evidence against Fiorito unless the Government has submitted independent evidence establishing Fiorito's participation. The primary independent evidence adduced to show Fiorito's participation in the conspiracy was his February 15 telephone conversation with Coduto, *supra*. The first half of that conversation obviously has nothing to do with the present case, so that the Government must depend on the final 33 lines of the transcript of that intercepted telephone call. By itself, that portion of the telephone conversation simply cannot be construed to connect Fiorito with the conspiracy proved against Coduto and the principal co-defendants. The most it shows is that Fiorito was informed that Coduto felt some persons were like "bees." The Government argues that "bees" refers to narcotics agents. That may be so, but there is no support for that theory in the February 15 conversation. For example, the conversation makes just as much sense if "bees" is taken to refer to Coduto's creditors. Even if the conversation refers to a narcotics conspiracy between Coduto and Fiorito, there is nothing to show that Fiorito was part of the larger conspiracy charged in the indictment.

As Judge McMillen correctly observed during the course of the trial, the February 15 conversation really did not prove anything. As he added, it would be "bootstrapping" to keep Fiorito in the case by reference to the January 13 and 24 conversations between Moore and

Coduto. Coduto's statements in those conversations about Fiorito's drug transactions are clearly hearsay as to Fiorito.

■ However, the January 1 and February 22 conversations are differently situated. Coduto's state of mind and word usage in these conversations have marginal relevance without regard to the truth of what Coduto stated. Thus the Government's brief can be construed as arguing that Coduto's comment that he was feeling heat and his use of the metaphor "swarming" in a conversation about narcotics on January 1 shows that his use of the similar metaphor "like a bunch of bees" on February 15 referred to narcotics agents. Similarly, it may be argued that Coduto's belief on February 22 that he was getting a large shipment of heroin within a week shows, without regard to whether such a shipment was actually due, that he referred to heroin on February 15 when he said to Fiorito "* * * if, ah, anything happens I'll get in touch with ya. * * * It should be about a week or ten days." The issue is whether these two conversations, admitted for these limited purposes, together with the conversation of February 15, are sufficient to tie Fiorito to the conspiracy and render the hearsay conversations of January 13 and 24 admissible.

■ Although the independent evidence need not tie Fiorito to the conspiracy beyond a reasonable doubt and slight evidence is sufficient, we find it insufficient here. Coduto's fondness for the "swarming bees" metaphor does not support an inference that he probably used that metaphor only in one context. Nor could the jury assume Coduto's life to be so uneventful that a statement that a something—not a delivery, but an unidentified "it"—should happen between February 22 and 25 probably refers to a delivery which a week later was expected between February 23 and 29. The jury had to speculate too much to reach

its verdict. The Government has cited many cases where conspiracy defendants were convicted on thin evidence, but none so thin as this. Since we hold that the Government failed to prove by admissible evidence that Fiorito joined the conspiracy engaged in by Coduto and other defendants, we need not reach the other questions presented by the briefs.

The conviction must be and is reversed.

STEVENS, Circuit Judge (dissenting).

If the conversations between Moore and Coduto were admissible against Fiorito, the evidence supporting Fiorito's conviction was plainly sufficient. The admissibility of the Moore-Coduto conversations depends, however, on whether the wiretapped conversations between Coduto and Fiorito on February 15, 1971, implicated Fiorito in the conspiracy. In answering that question, three points must be kept in mind: First, direct, nonhearsay evidence unequivocally identified Coduto as a distributor of heroin; second, nothing more than "slight" evidence of a connection between Fiorito and Coduto is required to make the Moore-Coduto conversations admissible against Fiorito; and third, in ruling on the admissibility of ambiguous evidence, the trial judge may properly draw inferences favorable to the government.

Having established by clear, convincing and unquestionably admissible evidence that Coduto was a middleman in the heroin trade, the conversation between Fiorito and Coduto which Judge Cummings has quoted * reasonably gives rise to these inferences: (1) Fiorito called Coduto for a reason which was not purely social; (2) Fiorito and Coduto were discussing a commercial transaction in which they might both participate; (3) the transaction was of a character which they did not desire to discuss frankly and openly; (4) Coduto

---

* The only portion of the conversation which is omitted contains certain uncouth language and a reference to a federal judge and a trial lawyer. The omitted segment is consistent with my view that the conversation as a whole may reasonably be interpreted as relating to the illegal business activities of Coduto.

was not in a position to participate immediately, but expected to be able to do so in a week or 10 days; (5) the activities of a group of unidentified persons made it appropriate to take no action for a short time—presumably those persons were law enforcement agents; (6) Coduto had certain legal difficulties about which he wanted Fiorito to be informed; and (7) since Coduto was engaged in the heroin traffic, it is inferable that his legal problems related to his business and that Fiorito would so understand.

Although none of these inferences may have been compelled, in view of the conversants' manner of speaking, in my opinion each inference was not only permissible but indeed entirely reasonable for the trial judge to draw in making his appraisal of the admissibility of other evidence shedding further light on the relationship between these two persons. Collectively, these inferences certainly constitute more than the requisite "slight" evidence of a connection between Fiorito and Coduto's heroin business. Since the other evidence in the record is therefore admissible against Fiorito and amply establishes his guilt beyond a reasonable doubt, I would affirm his conviction.