UNITED STATES of America, Plaintiff,

v.

ONE 1975 LINCOLN CONTINENTAL, Defendant.

No. 75 Civ. 3547–CSH.

United States District Court, S. D. New York.

Oct. 8, 1976.

Robert B. Fiske, Jr., U. S. Atty., Paul H. Silverman, Asst. U. S. Atty., New York City, for plaintiff.

Harry Salvan and Alvin Geller, New York City, for defendant.

## MEMORANDUM AND ORDER

HAIGHT, District Judge.

Plaintiff United States of America (the "Government") commenced this civil action for forfeiture against the defendant vehicle *in rem* pursuant to 21 U.S.C. § 881(a)(4), which subjects to forfeiture:

> "All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any

manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]."

The vehicle was claimed by G. Marx Coleman, who was represented by counsel at the trial of this case to the Court on October 7, 1976.

The Government contends that the vehicle is subject to forfeiture because, on February 22, 1975, it was used by the claimant to transport a quantity of heroin from an apartment building at 3555 Bruckner Boulevard in the Bronx, to Diggs' Den Bar, at 145th Street and Bradhurst Avenue in Manhattan. The Government contends further that, very shortly after the heroin was transported in this manner, it was offered for sale by one Willie James, Jr. to an undercover New York City police officer and a confidential informant.

On the trial the Government offered testimony from three New York City police officers: William Frawley, John Cestare, and Horace Balmer. The Government had attempted to subpoena claimant Coleman through his counsel, but Coleman did not appear at the trial. Claimant's counsel advised that he did not intend to call claimant as a witness on behalf of the *in rem* defendant, relying instead upon a motion to dismiss the complaint at the end of the Government's proof.

Police Officer Frawley testified at about 1:30 a. m. on February 22, 1975, he was in a police vehicle, maintaining surveillance at the intersection of 136th Street and Lenox Avenue, Manhattan. He observed a Mercury Monarch vehicle draw up and park opposite a building at 101 East 136th Street. Two individuals emerged from this car, one of them being known to Frawley as Willie James, Jr. and the other unknown to Frawley, although subsequently identified by him as claimant Coleman.

The police officers were assisted in the surveillance, and the events which followed, by a "cooperating individual", also referred to as a "confidential informer". During the course of the trial, counsel for claimant asked the police witnesses the name of this individual; but Government counsel took the position that his name must be kept confidential. In these circumstances, I shall refer to this individual as "X".[1]

X was equipped with an electronic listening device, which permitted Frawley, seated in his car, to overhear conversations taking place in X's presence. Thus Frawley was able to hear a conversation between James and X in the apartment of one Jack Kennedy at 101 East 136th Street, concerning a quantity of narcotics to be sold and delivered at a later time. Thereafter, James, Coleman and X left the building and entered the Mercury Monarch in which James and Coleman had originally driven to the area.

Frawley continued to listen, by means of the electronic device, to the conversation which took place in the Monarch. It is apparent from Frawley's evidence that X and James were the principals in a negotiated sale of heroin. Frawley testified that, at the beginning of this conversation, he heard X say: "Hello, Mark." It does not appear to be disputed that Coleman was known as "Mark". Later in the conversation, Frawley testified that he heard X ask James: "Who'll get the package?" James replied: "Mark will get the package." Frawley then heard X inquire: "Which car will be used?" James replied: "Any [obscene adjective] car." James went on to say that: "His man" had to get the "stuff" from another spot.

Counsel for claimant made timely objection, based upon the hearsay rule to the quoted references by James to Coleman in the conversation which Frawley overheard

---

1. Claimant moved to strike the entire testimony of the police officers because of their refusal, on instructions of Government counsel, to name the confidential informer. I deny that motion. The conversations which were overheard as a result of the informer's listening device are ruled inadmissible into evidence, for reasons unrelated to nondisclosure of the informer's name. As will appear from the discussion *infra*, the case turns upon evidence of the police officers' own observations, which in no way depends upon the identity of the informer.

by means of the device concealed upon the person of X. The Court, trying the case without a jury, received this evidence subject to connection, and reserved judgment on the hearsay objection. Resolution of the question depends upon the proper construction of Rule 801(d)(2), which is discussed *infra.*

Reverting to the account of Police Officer Frawley, he testified that following this conversation in the Monarch, X left the vehicle, proceeded south on Lenox Avenue to 135th Street, and there met with Detective Balmer, another police officer assigned to this operation. The Monarch drove off, proceeding to 145th Street and Bradhurst Avenue. Frawley remained at the 136th Street location, continuing to observe X and Balmer who were in another unmarked police car. Just before 2:00 a. m., as the result of a report which he received over his police radio, Frawley drove his car to 145th Street and Bradhurst Avenue, and commenced observation of Diggs' Den Bar. He observed Balmer's car pull up and park. X left the car, entered the bar, and was inside for about one minute. By means of the listening device, Frawley heard X ask for "Junior", which Frawley took to refer to James. X then came out of the bar in the company of James, and the two men went to Balmer's car. Frawley then overheard a conversation involving Balmer, James, and X, during the course of which James stated that: "His man would get the package and be back shortly." To the extent that the Government claimed that this was a reference to Coleman, counsel for Coleman pressed his hearsay objection.

Frawley overheard James telling Balmer to wait in his car, and that his man would return shortly. James also told Balmer that an additional amount of money was owing on the package to be delivered.

Frawley testified further that, at about 3:00 a. m., while he was still observing from his car parked at 147th Street and Bradhurst Avenue, he saw the Lincoln Continental vehicle which is the *in rem* defendant in this case pull up to the sidewalk in the vicinity of Diggs' Den Bar. Frawley

observed Coleman leave the vehicle, and enter the bar. About two minutes later, Frawley observed James leave the bar, and go to Balmer's vehicle. Because X was still in Balmer's vehicle, Frawley was able to overhear a conversation between James and Balmer, during the course of which James delivered a package to Balmer. James then returned into the bar. Both Balmer and Frawley drove to a police office, where Balmer produced the package just received from James. That package, consisting of five small manila envelopes each of the dimensions of about 2½ inches by 3 inches and wrapped together in cellophane, was subsequently discovered to contain heroin.

On cross-examination, Frawley testified that while he saw Coleman driving the Lincoln Continental in suit, he never saw James or X in that vehicle; he never saw a package of drugs in the Lincoln Continental; he never saw drugs on Coleman's person; and he never heard, in any of the conversations to which he testified, a voice which he could identify as Coleman's voice.

The next Government witness, Police Officer John Cestare, was also a member of the surveillance team assembled in respect of this particular transaction. Cestare testified that, at about 2:00 a. m., as a result of a communication he received on his police office radio, he followed in his car the Monarch vehicle previously referred to from the vicinity of Diggs' Den Bar to an address at 3555 Bruckner Boulevard, in the Bronx. Cestare testified that Coleman was driving the Monarch, at speeds sometimes in excess of 95 miles per hour. Coleman parked the Monarch in front of the building, and entered the building. Shortly thereafter, Cestare testified, the garage of the building opened, and the Lincoln Continental in suit came out, being driven by Coleman. Cestare followed the Lincoln Continental back to the vicinity of 145th Street and Bradhurst Avenue. He parked, and observed Coleman enter the bar.

Cestare testified further that on March 7, 1975 he was present when Coleman was arrested, while in the Mercury Monarch previously referred to, at Seventh Avenue

and 138th Street. On that occasion, Cestare testified that a package of drugs was found in the car by one Special Agent Donovan, although Cestare could furnish no detailed description of the package.

On cross-examination, Cestare testified that on February 22, 1975, he never saw drugs in the Lincoln Continental, or on Coleman's person, and that he never saw Coleman give drugs to other persons.

The final Government witness was Police Officer Balmer. He was in the car with X, across Bradhurst Avenue on 145th Street from Diggs' Den Bar. He testified that he could observe Coleman drive up in the Lincoln Continental, at around 2:40 a. m. He saw Coleman park in the vicinity of the bar, and enter it. About one minute later, James came up to the car in which Balmer and X were sitting, and delivered the package of heroin to Balmer.

Balmer also testified that prior to observing Coleman in the Lincoln Continental, as described above, he had engaged in a conversation with James, in which James said: "Mark will get the heroin, and you must wait for him to return." Counsel for claimant also objected to this reference to Coleman, on the basis of the hearsay rule.

Finally, Balmer testified that on March 6, 1975 he was present at the premises at 3555 Bruckner Boulevard, a twelve-story apartment house, where James maintained an apartment. Balmer testified further that on that occasion, heroin and cutting tools were found in James' apartment.

I have stated, in some detail, the evidence adduced by the Government. I now turn to the objection made by claimant, based upon the hearsay rule, to all references to Coleman in conversations which (a) Frawley overheard by means of X's listening device, and (b) in which Balmer was an actual participant.

The Government contends that such statements are admissible in accordance with Rule 801(d)(2) of the Federal Rules of Evidence. That Rule provides that a statement "is not hearsay if—

"(2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

It is apparent that the only exception to the hearsay rule arguably applicable to the declarations in question is contained in subparagraph (E) of Rule 801(d)(2). That subparagraph excludes from the hearsay rule "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

Although counsel for claimant argued on the trial that the provision in Rule 801(d)(2)(E) relating to coconspirator's statements applied only in criminal cases, it is well settled that the Rule "applies in both civil and criminal cases, though it is most frequently involved in criminal litigation." 4 *Weinstein's Evidence* (1975) at p. 801–141. However, it is equally well established that before this exception to the hearsay rule comes into play, the Government must establish that there was in fact a conspiracy involving the declarant and the other individual or individuals concerned; and that the declarant's statement was made "in furtherance" of that conspiracy. Furthermore, these propositions must be demonstrated by evidence independent of the declarations themselves. The rule in this Circuit is stated in *United States v. Calabro*, 449 F.2d 885, 889 (2d Cir. 1971), *cert. den.*, 404 U.S. 1047, 92 S.Ct. 428, 30 L.Ed.2d 735, 405 U.S. 928, 92 S.Ct. 978, 30 L.Ed.2d 801:

"Although it is clear that hearsay declarations of a conspirator are admissible against his coconspirators if made in the course of and in furtherance of the conspiracy, *Lutwak v. United States*, 344

U.S. 604, 617 [73 S.Ct. 481, 97 L.Ed. 593] (1953); *Clune v. United States,* 159 U.S. 590, 593 [16 S.Ct. 125, 40 L.Ed. 269] (1895), it likewise is clear that there must be independent evidence establishing a defendant's participation in the conspiracy before such declarations are admissible against him. *Glasser v. United States,* 315 U.S. 60, 74 [62 S.Ct. 457, 86 L.Ed. 680] (1942). Moreover, it is well settled in this Circuit that the trial judge must make this preliminary determination. [citations omitted]. To satisfy the threshold test of admissibility, the government must show by 'a fair preponderance of the evidence independent of the hearsay utterances' that the accused associated himself with the mutual venture. [citations omitted]."

Where that proof is insufficient, the declarations cannot be received in evidence. *United States v. Fiorito,* 499 F.2d 106 (7th Cir. 1974).

In the case at bar, the only evidence of Coleman's activities which exists independent of the James declarations consists of the observations of his comings and goings made by the police witnesses during the hours in question. This evidence, standing alone, is insufficient to demonstrate the existence of a conspiracy involving James and Coleman to sell narcotics on February 22, 1975. I further conclude that this insufficiency is not cured by the discovery, in early March, of heroin in the James apartment at the 3555 Bruckner Boulevard address; or the arrest of Coleman, also in March, in the Monarch vehicle, at which time a quantity of heroin was apparently found in the vehicle.

■ It follows that the claimant's objections to the James declarations must be sustained.

With the elimination of those declarations from the record, the proof in respect of Coleman comes down to this. At about 1:25 a. m. he drove up to the 136th Street address in the Mercury Monarch with James. He was in the car subsequently with James and X. At about 2:00 a. m., Coleman drove the Monarch to the 3555 Bruckner Boulevard address. He then drove the Lincoln Continental from the Bruckner Boulevard address back to Diggs' Den Bar, and entered the bar. Shortly thereafter, James sold heroin to Balmer and X. On March 6, 1975, twelve days after this transaction, police officers discovered quantities of heroin and cutting equipment at James' apartment at 3555 Bruckner Boulevard.

■ In the light of this evidence, the question arises: has the Government demonstrated that it had "probable cause" to believe that the Lincoln Continental was used to transport heroin before its sale by James to Balmer and X? "Probable cause" is the litmus paper by which initiation of the forfeiture proceeding is measured. 21 U.S.C. § 881(b)(4). The Government is not required to prove the truth of its belief. 19 U.S.C. § 1615 provides that in forfeiture proceedings, where the vehicle is claimed by any person, "the burden of proof shall lie upon such claimant . . ." Accordingly, the Government bears the initial burden of showing probable cause for the institution of the suit for forfeiture. Upon such a showing, the burden of absolving the vehicle from culpability rests upon the claimant. *United States v. One 1971 Porsche,* 364 F.Supp. 745 (E.D.Pa.1973); *United States v. One 1972 Toyota,* 505 F.2d 1162 (8th Cir. 1974).

■ I hold that, on the facts of this case as demonstrated by admissible evidence, the Government had probable cause to suppose that the Lincoln Continental was used to transport the heroin in question immediately prior to its sale. James and Coleman were in each other's company during the hours in question. A time came when Coleman proceeded in the Monarch vehicle, at high speed, to an address at 3555 Bruckner Boulevard where James had an apartment. Coleman then drove from that address, in the Lincoln Continental, to Diggs' Den Bar and entered the bar. Almost immediately thereafter, James sold a package of heroin to Balmer and X, who had been waiting in their car outside the bar for a considerable period of time. Fi-

nally, quantities of heroin were discovered in the James apartment at 3555 Bruckner Boulevard only about two weeks after the incident.[2] I hold that these facts are sufficient to demonstrate that the Government had probable cause to initiate forfeiture proceedings against the Lincoln Continental. Under the statutes, the burden then fell upon the claimant to come forward with proof on behalf of the vehicle that it had not in fact been used to transport the heroin in question. The claimant, despite ample opportunity to do so, offered no proof at the trial.

The foregoing discussion constitutes the Court's Findings of Fact in this case. I make the following Conclusions of Law:

(1) This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355 and pursuant to 21 U.S.C. § 881.

(2) The Government has demonstrated probable cause to initiate this action, such probable cause being based upon a reasonable inference that on February 22, 1975, the Lincoln Continental, defendant *in rem,* was used to transport heroin in facilitation of its eventual sale.

(3) Claimant Coleman has failed to demonstrate the innocence of the vehicle, or a valid defense to the Government's claim for forfeiture. 21 U.S.C. § 885.

(4) Judgment shall be entered in favor of the Government and against the Lincoln

Continental, forfeiting the Lincoln Continental to the United States. Costs, including court costs, and the fees and expenses incurred in the seizure and storage of the Lincoln Continental shall be entered against claimant Coleman.

It is So Ordered.

---

**2.** While discovery of drugs at the James apartment on March 6, 1975 was insufficient to demonstrate a conspiracy between James and Coleman on February 22 for the purposes of Rule of Evidence 801(d)(2)(E), that discovery may be considered within the context of the showing of probable cause under 21 U.S.C. § 881. This involves no inconsistency. The Government's burden is heavier in the Rule 801(d)(2)(E) context: it must demonstrate a conspiracy by "a fair preponderance" of the independent evidence to trigger the rule and admit the declaration. The requirement under 21 U.S.C. § 881(b)(4) for initiation of a forfeiture proceeding is that the Government have "probable cause" to believe that the vehicle was used to transport drugs. That is, in the Court's opinion, a less onerous burden. It may be sustained by the demonstration of circumstances leading to a reasonable inference of use. *United States v. One 1971 Porsche,* 364

F.Supp. 745, 747 (E.D.Pa.1973). The subsequent discovery of heroin in James' apartment, at the address to which Coleman drove shortly before the sale of the heroin at bar, is such a circumstance.

"Probable cause", in the forfeiture context, "means less than prima facie legal proof and no more than 'a reasonable ground for belief in guilt.'" *Ted's Motors v. United States,* 217 F.2d 777, 780 (8th Cir. 1954), citing *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). The *Ted's Motors* case suggests that "information of guilt, even though hearsay and incompetent with respect to the merits of a case such as the instant one, may constitute probable cause or, in other words, a reasonable ground for a belief in guilt, justifying the institution of the action." 217 F.2d at p. 780. I need not adopt that suggestion in the case at bar, since the competent evidence is sufficient to establish probable cause.