**UNITED STATES of America, Appellant,**

v.

**George Anthony PAPPAS, Defendant, Appellee.**

**No. 78–1474.·**

United States Court of Appeals, First Circuit.

Argued Sept. 13, 1979.

Decided Dec. 28, 1979.

As Amended Jan. 25, 1980.

---

Elliot D. Lobel, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

Ann Lambert Greenblatt, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

We granted rehearing en banc from a decision of a panel of this court[1] reversing a district court's order suppressing evidence against the appellee, George Pappas. Pappas was charged with acquiring and possessing a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 922(h)(1). The firearm giving rise to this charge was discovered in the trunk of Pappas's car during an inventory search that followed the warrantless seizure of the car by agents of the Drug Enforcement Administration (DEA) pursuant to a forfeiture statute, 21 U.S.C. § 881. Prior to trial, Pappas successfully pursued in the district court a motion to suppress the firearm, and the government appealed. Pappas raises three arguments before this court in favor of suppression: that the statute does not authorize such a warrantless seizure absent probable cause to believe that the vehicle was contemporaneously being used to violate the narcotics laws and some degree of exigency in the circumstances surrounding the seizure; that the warrantless seizure, even if authorized by the statute, was unconstitutional; and that the warrantless search following the seizure was unconstitutional, and its fruits, therefore, must be suppressed.

*Legality of the Seizure Under the Statute*

Section 881 provides, inter alia, for forfeiture to the government of vehicles used or intended to be used to transport or to facilitate the distribution of controlled substances in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970.[2] Section 881(b) authorizes the seizure of property subject to forfeiture under the Act "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims". Rule C of these rules, which sets forth the procedures for *in rem* proceedings, provides that in statutory forfeiture actions a verified complaint shall be filed containing "such allegations as may be required by the statute pursuant to which the action is brought", Rule C(2), and "[u]pon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action", Rule C(3).

Section 881(b) also enumerates four exceptions to its warrant requirement.[3] It is the fourth exception, subsection 881(b)(4), which authorizes warrantless seizures when "the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this [title]", that the government relies on as justifying its seizure of Pappas's car. The government's argument is, concisely, that in August of 1976 Pappas's car was observed being used in connection with sales of two

1. 600 F.2d 300 (1st Cir. 1979). The facts are more fully set out in the panel opinion and in *United States v. Richman*, 600 F.2d 286 (1st Cir. 1979).

2. 21 U.S.C. § 881 provides in relevant part:
   "(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
   (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

   .     .     .     .     .

   (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2)   .   .   .   ."

3. Seizure without process may be made when:
   "(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
   (2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;
   (3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
   (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter."

quantities of cocaine and that based on this probable cause, agents of the DEA seized the car eleven months later pursuant to subsection 881(b)(4). Pappas does not dispute that the government had probable cause to believe that the car had been used to violate the narcotics laws eleven months before its seizure. He does, however, argue that this warrantless seizure does not fall within the "probable cause" exception to section 881(b)'s process requirement.[4]

We find no holdings, by either appellate or district courts, that squarely address the proper scope of warrantless seizures permissible under subsection 881(b)(4). In most of the cases applying this exception, federal agents had probable cause to believe that the vehicle in question was being used to transport contraband at the time of the seizure. See *United States v. One 1972 Chevrolet Nova*, 560 F.2d 464, 469–70 (1st Cir. 1977) (dictum); *United States v. Capra*, 501 F.2d 267, 280 (2d Cir. 1974); *United States v. Thrower*, 442 F.Supp. 272, 278 (E.D.Pa.), aff'd, 568 F.2d 771 (3d Cir. 1977); *United States v. One 1975 Lincoln Continental*, 72 F.R.D. 535, 540 (S.D.N.Y.1976). See also *United States v. Miller*, 589 F.2d 1117, 1132 (1st Cir. 1978); *United States v. Balsalmo*, 468 F.Supp. 1363 (D.Me.1979). Pappas urges us to hold that such contemporaneous probable cause is a necessary prerequisite of a warrantless seizure under subsection 881(b)(4). In support of this assertion, Pappas cites Judge Lay's dissenting opinion[5] in *O'Reilly v. United States*, 486 F.2d 208, 214 (8th Cir.), cert. denied, 414 U.S. 1043, 94 S.Ct. 351, 38 L.Ed.2d 234 (1973). Judge Lay argued:

"The exceptions under subsection 4 dealing with 'probable cause' would be self-defeating if they meant that process to seize property is not required in *every case* where the property has been used in violation of the Act. If the process requirement has any meaning it must be that process is necessary unless there exists probable cause that Section 881(a) is being *contemporaneously* violated and the exigencies of the surrounding circumstances make the requirement of obtaining process to seize the vehicle unreasonable and unnecessary." (Emphasis in original.)

In *United States v. One 1972 Chevrolet Nova, supra*, we echoed the concerns of Judge Lay in *O'Reilly*: "Since § 881(b)(4) creates an exception that threatens to swallow § 881(b)'s warrant requirement, we would be reluctant to give it an absolutely literal reading." 560 F.2d at 469 (citing *O'Reilly v. United States, supra*). Although Pappas urges us not to abandon our "allegiance" to Judge Lay's dissent, the government quite correctly points out that in *One 1972 Chevrolet Nova* we merely said that subsection 881(b)(4) authorizes warrantless seizures "at least" when both contemporaneous probable cause and exigency are present. Id. at 469–70. Since the facts in that case satisfied both of these requirements, our reservations over giving literal effect to the statutory language, although perhaps suggestive of our view of the section under other circumstances, were dictum. Thus, we now face for the first time the task of determining whether the statute authorizes a warrantless seizure when the events providing the probable cause are remote in time from the actual seizure of the property and no exigent circumstances necessitate prompt action.[6]

---

4. The government does not argue that any of the other exceptions to the process requirement—incident to arrest or warranted search, pursuant to judgment in favor of the United States, or dangerous to health or safety—applies to the seizure of Pappas's car.

5. Our endorsement of Judge Lay's dissent does not necessarily place us in conflict with the holding of the majority in *O'Reilly*, since their reliance on the "probable cause" exception was at most an alternative ground for the holding in that case. The majority first cited the subsection (b)(1) exception for seizures incident to an arrest, stating that "the seizure was made pursuant to a valid arrest." 486 F.2d at 210. The discussion of probable cause in the following sentence does not refer specifically to subsection (b)(4), and to the extent that it does imply the court's reading of that exception, it is dictum.

6. It is true that once agents of the DEA sought to execute an arrest warrant on Pappas, there was a degree of exigency surrounding the seizure of the car. Pappas, his wife, or a compa-

Our starting point is, of course, the statutory language itself. Although the meaning of subsection 881(b)(4) appears to admit but a single reading when viewed in isolation, we are guided by the principle of statutory construction that discrete clauses or subsections of a statute should be construed to effectuate the manifest purpose of the statute or section to which they directly relate. *See Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). In section 881(b) Congress provided a general requirement of process for seizures executed to enforce the forfeiture provision of section 881(a), and then enumerated four exceptions to this requirement. But, as we observed in *One 1972 Chevrolet Nova, supra,* a literal reading of the (b)(4) "probable cause" exception would vitiate the section's warrant requirement. We would hesitate to construe the general provision as authorizing issuance of a warrant on less than a showing of probable cause, since this would conflict with the Fourth Amendment's proscription that "no Warrants shall issue, *but upon probable cause.*" Thus we are unable to conceive of a class of cases in which the process requirement would be satisfied, yet the (b)(4) exception, read literally, would not at the same time apply; i. e., every case requiring process would also qualify for the exception to the requirement.

Our brother, in his concurrence, chides us for making the "novel assumption" that the

warrant prescribed by Supplemental Rule C may issue only upon probable cause. We agree that this is a troublesome provision to apply in this context, since the prevailing law in admiralty cases is that a warrant to initiate an action *in rem* by attachment need not be accompanied by probable cause. *See* 7A *Moore's Federal Practice* ¶ C.12 at 681–82 (2d ed. 1948). We do not undertake to reexamine or change the law of seizure in the intended context of the Supplemental Rules, however, for this is not an admiralty case.[7] Section 881 is a punitive, quasi-criminal statute, *cf. One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (seizure of vehicle used to violate liquor laws), and we suspect that Congress gave little consideration to the Fourth Amendment implications of applying the Supplemental Rules in this context.[8]

The Supreme Court has sanctioned the issuance of administrative search warrants on less than probable cause, *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 97 S.Ct. 776, 50 L.Ed.2d 739 (1978), but has never done so in the context of a criminal or quasi-criminal proceeding. We do not see how the incorporation of a procedure from a context in which warrants traditionally have issued without probable cause can immunize a warrant from the Fourth Amendment's generally applicable probable cause requirement. Our brother cites Judge Wright's

triot might have sought to remove the car and thwart the government's forfeiture. But this exigency was in fact manufactured by the government. Upon questioning at oral argument, counsel for the government satisfactorily explained why the DEA had delayed in arresting Pappas and seizing his car after the initial drug transactions in August of 1976. This explanation, however, in no way establishes the impracticability of obtaining a warrant for the car. Since the DEA was able to secure a warrant for Pappas's arrest, we fail to see why it could not also have obtained a warrant to seize the car.

7. Professor Moore has noted that there may be "constitutional limitations on the power to use maritime seizure procedures to enforce government forfeiture or penal statutes." 7A *Moore's Federal Practice* ¶ C.12 at 33 (4th ed. Supp. 1978–79), *citing United States v. Articles of*

*Hazardous Substance,* 444 F.Supp. 1260 (M.D. N.C.1978). The Fourth Circuit subsequently reversed in *United States v. Articles of Hazardous Substance,* 588 F.2d 39 (4th Cir. 1978), with little analysis or discussion of the district court's reasoning.

8. Our brother argues that nothing in the language or the history of the statute suggests any congressional intent to create a more restrictive forfeiture procedure than that provided for in 49 U.S.C. § 782 (forfeiture of vehicles used to transport illegal drugs, firearms, or counterfeiting apparatus). Section 782, however, merely provides that property subject to forfeiture "shall be seized"; no process requirement is stated. Had Congress *not* intended to "tighten up on warrant requirements", it is unclear to us why it did not merely duplicate in section 881 the broad authorization of 49 U.S.C. § 782.

dictum in *Founding Church of Scientology v. United States,* 133 U.S.App.D.C. 229, 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied,* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969), for the proposition that probable cause is not a prerequisite for issuance of a warrant in civil forfeiture proceedings. We do not find this case apposite to our brother's argument, however. The issue in *Scientology* was the propriety of a warrantless seizure measured against the reasonableness clause of the Fourth Amendment, not the expendability of the probable cause requirement under the warrant clause. We will not infer congressional abandonment of the Fourth Amendment's protection against general warrants in a context in which the Court has not yet done so.

Moreover, we cannot see the sense of the statute if the requisite "warrant" may be obtained on less than probable cause. In view of the exceptions to the general provision, the only case in which the government would be required to obtain process for a seizure is that in which it is acting on a hunch or surmise about the possible illicit use or hazardous nature of property making it subject to forfeiture. If, as our brother argues is the case in admiralty, a judicial officer is duty-bound to issue such a warrant upon application, we can discern no salutary effect of such a warrant requirement other than the dubious benefit of arming the seizing officer with an official paper to give added legitimacy to his seizure. Thus, we decline to adhere to the literal language of the (b)(4) exception, since to do so would render essentially meaningless the basic provision it purports to qualify. *See Rosado v. Wyman,* 397 U.S. 397, 415, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); 2A C. D. Sands, *Statutes and Statutory Construction* 65–66 (4th ed. 1973).

We are also drawn toward a circumscribed reading of the (b)(4) exception by our desire to avoid the constitutional questions that a broad construction would raise. The canons of statutory construction demand not only that we avoid construing this statute to violate the Constitution, *see The Charming Betsy,* 6 U.S. (2 Cranch) 64, 118, 2 L.Ed. 208 (1804), but that we construe the statute to avoid a question of its constitutionality, where such a construction is "fairly possible", *NLRB v. The Catholic Bishop of Chicago,* 440 U.S. 490, 500, 511, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979); *International Association of Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). Were we to apply the statute in the manner urged by the government, we would be required to decide whether the Fourth Amendment permits the warrantless seizure of an automobile based only upon a federal agent's probable cause to believe that the government has a superior possessory interest in the vehicle [9]; and if it does not, to hold the statute unconstitutional.

We are aware that our task is one of construction, not amendment, of this provision. *See NLRB v. The Catholic Bishop of Chicago, supra,* 440 U.S. at 511, 99 S.Ct. 1313 (Brennan, J., dissenting). Thus, we are limited to a reading of the statute that is "fairly possible", one that will advance rather than subvert the congressional intention behind the statute. *Id.* The companion provisions to the "probable cause" exception, subsections (b)(1)–(b)(3), suggest a principle by which we can limit the reach of subsection (b)(4) in a manner that effectuates the intent embodied in the statute as a whole. Since each of the other three exceptions in section 881(b) involves circumstances in which either the need for or the practicality of process is significantly diminished or eliminated, we think it reasonable to

**9.** To resolve this question, we would be required to address the issue on which the Supreme Court divided 4:4 in *Cardwell v. Lewis,* 417 U.S. 583, 596–99, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). *See United States v. One 1972 Chevrolet Nova,* 560 F.2d 464, 467 n.1 (1st Cir. 1977). Alternatively, we would be required to consider extending the Supreme Court's holding in *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (upholding warrantless seizure of automobiles to satisfy tax levy), in a way that neither the Supreme Court nor any court of appeals has done. *See One 1972 Chevrolet Nova, supra,* at 468 n.2.

read the "probable cause" exception as justifying the warrantless seizure of an automobile only when the seizure immediately follows the occurrence that gives the federal agents probable cause to believe that the automobile is subject to forfeiture under section 881(a) *and* the exigencies of the surrounding circumstances make the requirement of obtaining process unreasonable or unnecessary. The seizure of Pappas's automobile eleven months after its use in violation of the narcotics laws failed to meet either of these requirements.

### *Suppression of the Firearm*

#### A.

Pappas, relying on the dissent in *O'Reilly v. United States, supra*, argues that because the seizure of his car violated the process requirement of section 881(b), the rifle discovered during the subsequent inventory search must be suppressed. Although we have not assessed the constitutionality of the seizure of Pappas's car, the exclusionary rule is also applicable to violations of statutory restrictions on searches, seizures, and arrests. *See Miller v. United States*, 357 U.S. 301, 313–14, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). The Supreme Court has held warrantless "inventory" searches of vehicles legally seized pursuant to forfeiture statutes to be reasonable under the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cooper v. California*, 386 U.S. 58, 86 S.Ct. 1348, 16 L.Ed.2d 357 (1967). Implicit in *Opperman* and *Cooper* and in the subsequent cases applying these decisions in the context of searches of impounded vehicles, *see e.g., United States v. Johnson*, 572 F.2d 227, 233 (9th Cir. 1978); *United States v. McCormick*, 502 F.2d 281, 284 (9th Cir. 1974), is the rationale that the lawfulness of a warrantless inventory search depends on the lawfulness of the seizure of the vehicle. Although we think that in most cases the relationship between the two occurrences justifies suppression of the fruits of a search following an illegal seizure, the circumstances of this case dictate a different result.

In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the defendant was arrested for refusing to identify himself to a police officer, a misdemeanor under a City of Detroit ordinance. The arresting officer performed a search of the defendant's person incident to this arrest and discovered a controlled substance, for which the defendant was subsequently prosecuted. In reversing a Michigan Court of Appeals' decision suppressing the evidence obtained during the search, the Supreme Court assumed that the ordinance under which DeFillippo was initially arrested was unconstitutional, but refused to apply the exclusionary rule to the fruits of the search incident to the arrest. The Court reasoned that the search was independent of the constitutionally tainted ordinance and that the arresting officer, acting in good faith, had probable cause to believe that DeFillippo had violated Michigan law and, therefore, was subject to arrest. *Id.* at 39, 99 S.Ct. 2633.

We recognize that the seizure of Pappas's car stands in a somewhat different relationship to the inventory search than the violation of the Stop and Identify ordinance bore to the search in *DeFillippo* and that the antecedent event in this case—the illegal seizure—was violative of a federal statute, not the Constitution. Nevertheless, we think that the rationale of that case applies here as well. A warrantless inventory search following seizure of a vehicle is reasonable because it is conducted for benign purposes—protection of the owner's property and protection of law enforcement officials from liability for theft—not to uncover evidence of criminal activity. *See South Dakota v. Opperman, supra*, 428 U.S. at 378, 96 S.Ct. 3092. (Powell, J., concurring); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); Note, *Warrantless Searches and Seizures of Automobiles*, 87 Harv.L.Rev. 835, 848–52 (1974). Once a vehicle has been seized, especially if there is probable cause to believe it is sub-

ject to forfeiture,[10] the justification for an inventory search exists even if the antecedent seizure is eventually found to be illegal. Thus, a true inventory search, one that is not a pretext for gathering evidence,[11] is independent of the seizure that precedes it. We do not think that the search of Pappas's car necessarily became unreasonable, and therefore unconstitutional, because the car was illegally seized. Since the DEA agents had probable cause to believe that the government had a right to possession of the car,[12] they were entitled to inventory its contents. *See Cooper v. California, supra,* 386 U.S. at 61–62, 86 S.Ct. 1348, 16 L.Ed.2d 357; *United States v. McCambridge,* 551 F.2d 865, 870 (1st Cir. 1977).

█ The exclusionary rule ordinarily applies to the fruits of an illegal search or seizure, even if it was conducted pursuant to a statutory authorization never before held invalid. *See, e.g., Ybarra v. Illinois,* 440 U.S. 970, 99 S.Ct. 1532, 59 L.Ed.2d 786 (1979); *Torrez v. Puerto Rico,* 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979); *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The Court justified its apparently contrary holding in *DeFillippo* in terms of the policy underlying the exclusionary rule:

> "The purpose of the Exclusionary Rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search. To deter

police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the Exclusionary Rule."

443 U.S. at 38 n. 3, 99 S.Ct. at 2633 n. 3. *DeFillippo* can be distinguished from the majority of cases because the appellant in that case would have had an incentive to challenge the constitutionality of the Detroit ordinance in defense to a criminal prosecution for the substantive crime it defines. In cases such as *Ybarra* or *Almeida-Sanchez,* in which the challenged statute itself purports to authorize an unconstitutional search, no such incentive would exist if the exclusionary rule were not applied.

In the instant case, the agents of the DEA, like the officer in *DeFillippo* who made an arrest and subsequent search in reliance on the validity of the Detroit ordinance,[13] seized Pappas's car pursuant to a literal reading of subsection 881(b)(4) that was uncontradicted by any prior judicial construction of the statute and was in accordance with standard DEA procedures. Moreover, since it is not clear that there would have been no incentive to challenge the seizure in the forfeiture proceeding, see *United States v. One 1972 Chevrolet Nova,* 560 F.2d 464, 467 (1st Cir. 1977), the unavailability of the exclusionary rule in a separate criminal prosecution would not have insulated the government's improper construction of the statute from attack. Thus, we find that application of the exclusionary rule is inappropriate in this case.[14]

---

**10.** In forfeiture cases the protective function of an inventory search is particularly important since the vehicle may be retained in possession of the government for months before forfeiture proceedings are instituted. *See, e. g., United States v. One 1973 Buick Riviera Auto,* 560 F.2d 897 (8th Cir. 1977) (five-month delay between seizure and forfeiture proceeding).

**11.** The magistrate who heard the suppression motion specifically found that the search was not pretextual, and the district court did not reject this finding.

**12.** Pappas does not argue that the car was not subject to forfeiture under the provisions of 21 U.S.C. § 881(a).

**13.** We believe that a different result would be mandated if the DEA had made a practice of using warrantless seizures pursuant to section 881(b)(4) as a pretext to search vehicles for evidence to use against defendants charged with narcotics offenses. But there is no evidence suggesting that this is the case.

**14.** Our decision today does not license the use of evidence obtained as a result of future inventory searches incident to forfeiture seizures in violation of § 881(b)(4). Future violations of the timeliness and exigency requirement we today find implicit in this exception to the statute's process requirement, which could no longer be justified as being in good faith reliance on the terms of the statute, would sub-

## B.

■ Pappas posits ·as an independent ground for suppressing the firearm that the search, which occurred at DEA headquarters two days after the seizure, was not an "inventory" search, but rather an investigative search for evidence. We need not ·address the question whether such a warrantless search would violate the Fourth Amendment, *see United States v. Johnson, supra,* 572 F.2d at 232–33, since, as we indicated above, the record does not support this characterization. The uncontradicted testimony of the DEA agent who conducted the search was that it was an inventory "pursuant to regulations in the Agent's Manual", and the magistrate found the search to have been a noninvestigative inventory. Pappas cites no facts in the record suggesting that the purported inventory was in fact "a pretext concealing an investigatory police motive." *South Dakota· v. Opperman, supra,* 428 U.S. at 376, 96 S.Ct. at 3100.

■ Pappas also argues that the doctrine permitting in-custody automobile searches applies only to local police and not federal law enforcement officers. We decline to make such a distinction. The interests justifying warrantless inventories by local police—protection of the police from liability and disputes over lost or stolen property and protection of the owner's property while it is in custody—seem as apposite in assessing the constitutionality of the caretaking procedures of federal law enforcement officers.

*The order of the district court is vacated.*

LEVIN H. CAMPBELL, Circuit Judge (concurring in the result).

I agree that the evidence should not be suppressed, and therefore concur in the judgment of the court.

With all respect, however, I do not accept the court's interpretation of 21 U.S.C. § 881(b). This provision was enacted in 1970 as part of the so-called Comprehensive Drug Abuse Prevention and Control Act of 1970, which had as one of its aims "to strengthen existing law enforcement authority in the field of drug abuse." House Report No. 91–1444, 3 U.S.Code Cong. & Admin.News,ₐ p. 4566 (1970). When this legislation was enacted, long-standing authority already existed (and was not then repealed) for the seizure of a vehicle which "has been or is being used" to transport contraband such as a narcotic drug. 49 U.S.C. §§ 781, 782. As of 1970 the courts were virtually unanimous that forfeit property could be constitutionally seized without warrant. *See, e. g., United States v. Francolino,* 367 F.2d 1013, 1021 (2d Cir. 1966), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967). There is not a shred of evidence that the framers of the 1970 Act, which contained the criticized "no-knock" provision, intended to restrict the authority ·of law enforcement officers in the manner outlined by my brethren. Indeed my brethren not only credit the Congressmen with engrafting a judicially evolved "automobile exception" onto § 881(b)(4), but also go a step further and here select, without explanation and without any support in the legislative record, an especially restrictive version of such an exception. I could understand, though not agree with, their approach if presented as a constitutional ruling. But I do not see how it can possibly be presented as a piece of statutory construction. There is not a hint in the statute or legislative history that Congress intended that the Attorney General's powers in the drug enforcement field were to become less than his powers to seize, for example, vehicles used to transport counterfeit currency, governed by 49 U.S.C. §§ 781, 782. To the contrary, the legislative history indicates that Congress thought it was *increasing* law enforcement powers in the narcotics field. Significantly, 49 U.S.C. §§ 781, 782 were not repealed as respects narcotics, as would have been expected had Congress intended to tighten up on warrant requirements, contrary to preexisting law.

---

ject *any* fruits, whether or not obtained pursuant to an otherwise innocent inventory search, to suppression in any subsequent criminal proceedings.

The court bases its restrictive construction of § 881(b)(4) solely on the supposition that to give effect to its plain language is to "swallow up" the earlier part of the statute which indicates that seizure may be effected "upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime claims." To develop this argument, my colleagues make the novel assumption that the "warrant for the arrest of the vessel or other property that is the subject of the action" mentioned in Rule C of the Supplemental Rules is governed by the fourth amendment requirement that no warrant shall issue except upon probable cause. They then argue that since probable cause would be required in any event, a literal reading of the § 881(b)(4) exception would vitiate the earlier provision calling for process to be used. The court concludes that Congress, simply forgot to indicate that warrantless seizures under § 881(b)(4) were reserved for cases of extreme exigency, where the vehicle was presently being used to transport drugs.

There are two answers to this approach. The first is that even if § 881(b)(4) providing for warrantless seizures is overly broad as written, this scarcely justifies the supposition that Congress intended the limitation now imposed. That limitation is not self-evident, and there is nothing in the legislative history to show that Congress had it, or any other, limitation in mind. The mere fact that a statute is, in a court's view, poorly conceived does not license the court to rewrite it in a manner which radically departs from prior law and for which Congress has expressed no preference.

My second difficulty with the court's approach is that I think it wrong insofar as it reviews the maritime in rem procedure referred to in § 881(b) as mandating a prior probable cause finding, as such, by the clerk. The supplemental admiralty rules provide for an entirely different type of proceeding from one in which a conventional search warrant is issued. *Compare* Fed. R.Crim.P. 41. Under Rule C(3), once a verified complaint is filed, the clerk is directed forthwith to issue a "warrant" for the arrest of the vessel or other property. Admiralty practitioners (and clerks) would be shocked to learn that the clerk in an in rem proceeding must refuse to issue process before making a determination of probable cause. See discussion in 7A Moore's Federal Practice 681–82 (2d ed. 1948) ("Once a Complaint in proper form is filed, it is the duty of the clerk to issue and deliver the warrant 'forthwith.'"). While the process the clerk issues may be called a warrant, use of this term does not necessarily import all of the substance and procedure of criminal arrest or seizure warrants. The fact that process may issue without a showing of probable cause before a neutral magistrate is not fatal. As Judge Wright observed (though did not decide) in *Founding Church of Scientology v. United States*, 133 U.S. App.D.C. 229, 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied*, 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969), a case involving an FDA condemnation proceeding subject to the admiralty procedure,

> "Though warrants are generally necessary for the arrests of persons and for searches, the warrant requirement has not traditionally been imposed upon seizures of the type involved in this case— attachment of property in the course of civil proceedings. This does not mean that the Fourth Amendment does not apply to such seizures, in both its substantive prohibition against unreasonable seizures and its procedural requirement of judicial or quasi-judicial review of the decision to seize. It means merely that judicial restraint is imposed through a different form of proceeding than the showing of probable cause before a magistrate. In the case of ordinary civil attachments, the details of such proceedings are, even in the federal courts, left to state law. In cases in admiralty, the process is governed by the Admiralty Rules, lately recodified as a supplement to the Civil Rules. [Footnotes omitted]."

*See also United States v. Articles of Hazardous Substance*, 588 F.2d 39 (4th Cir. 1978). (*See also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1973) (summary forfeiture does not deny due process)).

I thus read § 881(b) as simply providing for two alternative means of commencing forfeiture proceedings, the first being in the nature of an attachment pursuant to the admiralty procedure and the second, seizure. The Attorney General may commence the proceeding by filing a verified complaint, in which event process for seizure of the conveyance or property will issue "forthwith" (see Rule C), and the owner may defend in court if he believes the seizure unjustified. Alternatively, the Attorney General may effect a seizure without initiating judicial proceedings but only if he determines there is probable cause. In the latter case, forfeiture proceedings are to be instituted "promptly" thereafter. Given the differences between these two procedures, I think, with all due respect, that the "swallow-up" argument disappears. Congress could quite rationally offer both alternatives to the Attorney General.* To be sure, my colleagues may feel that Congress went about things the wrong way, but that is another matter.

Since, as I would submit, there is nothing whatever to show Congress intended in the 1970 Act to change the law on the matter of warrantless seizures, I think the only question today must be a constitutional one. On that subject, the existing law, as best I can discern it, is as described in the panel's decision, 600 F.2d 300 (1st Cir. 1979), to which I would adhere. To be sure, the Supreme Court may in the future decide the time has come to alter the traditional view that forfeiture is an exception to the warrant requirement. But I think it preferable that major constitutional evolutions in this area be left to that tribunal so as to provide a greater degree of uniformity and more certainty for those whose duty it is to enforce the law.

---

* Use of an *in rem* procedure has been a common means of effecting forfeitures. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683–86, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1973). Such a procedure would seem especially suitable for the arrest of vessels and merchandise in bulk, *id.,* but may have seemed too cumbersome for many other cases.