UNITED STATES of America

v.

Richard Mario LESLIE.

No. Cr. 84–48–3

United States District Court, D. Vermont.

Nov. 28, 1984.

Peter Langrock, Langrock, Sperry, Parker & Wool, Middlebury, Vt., for plaintiff.

Robert F. O'Neill, Asst. U.S. Atty., Burlington, Vt., for defendant.

## MEMORANDUM DECISION

BILLINGS, District Judge.

This matter came before the Court on Defendant's Motion to Suppress and for the Return of One Datsun Truck. For the reasons recited below, that motion must be and is GRANTED.

FACTS

On September 10, 1984, an arrest warrant was obtained for the arrest of Defend-

ant, Mario Leslie. On September 20, 1984, Mr. Leslie turned himself in to DEA authorities.

The Defendant's truck, the subject of this motion, had been earlier observed in connection with the drug trafficking activities for which all five defendants in this case stand charged. On August 29, 1984 Defendant Leslie was present, along with his truck, when Defendant Ketcham was arrested and a search warrant was executed at the Ketcham residence in Cabot, Vermont.

At that time, an inspection of Leslie's truck revealed a map, on which certain locations were highlighted, and a receipt for 30 pounds of lime. Lime was observed on the ground at the Ketcham residence and is often used in the cultivation of marijuana. On the same day, Defendant Leslie arrived at his property in Sheffield, Vermont, in his truck and told Defendant Pradayrol to start cutting marijuana plants.

Upon the issuance of the September 10 arrest warrant for Defendant Leslie, law enforcement officials took steps to locate his truck. Officials conducted a sustained surveillance of Defendant's residence in Westminster, Vermont. On September 20, 1984 when Defendant turned himself in, officials also searched for the truck at the Federal Building in Burlington, Vermont, and at the law offices of Langrock, Sperry, Parker and Wool, both in Burlington and Middlebury. After September 20, 1984 officials tried to locate Defendant's truck in Boston, where he was reportedly visiting his girlfriend. Except for one or two "sightings" of the truck at Defendant's residence in Westminster, efforts to locate, and permanently seize, the truck proved unavailing.

Finally, on October 8, 1984 State Trooper Holton called DEA Agent Raybourn in Burlington to report that he observed the truck at Defendant's Westminster residence. Thereupon Officer Kuzmeskus, a police officer with the Vermont Drug Task Force, was directed by Agent Raybourn to go to Defendant Leslie's residence to conduct surveillance of the truck. Officer Kuzmeskus did so and maintained surveillance until approximately 8:30 p.m. Surveillance ended at that time because there appeared to be little activity within the house.

Surveillance was re-established on the morning of October 9, 1984. Trooper Holton contacted Officer Kuzmeskus and reported that the truck was still located in the driveway of Defendant Leslie's Westminster residence. Kuzmeskus then prepared to and did proceed to Leslie's residence. In the interim, Agent Raybourn had initiated procedures to obtain a seizure warrant. When Officer Kuzmeskus arrived at Leslie's residence, the truck was no longer in the driveway. Kuzmeskus then proceeded beyond Leslie's residence and into a nearby intersection. Shortly thereafter, Kuzmeskus observed the truck traveling west beyond the intersection where he was parked and, then, into Leslie's driveway. Kuzmeskus then proceeded from the intersection beyond Leslie's driveway to a point where he could conduct surveillance. Once there, he observed Defendant pull out of his driveway in his truck, and proceed toward the officer. After Leslie passed Officer Kuzmeskus' location, the officer turned and started following the truck. Shortly thereafter, Defendant Leslie turned around and once again began proceeding toward Officer Kuzmeskus. Officer Kuzmeskus then pulled into the center of the road and flashed his lights in an effort to pull Defendant Leslie to the side of the road.

Once pulled over, Kuzmeskus approached Leslie's truck and asked if he could speak with him, to which Defendant Leslie responded in the affirmative. Kuzmeskus then informed Leslie that he was seizing the truck.

At no time during this occurrence was Defendant Leslie speeding. Nor was there ever any suspicion that Defendant's truck contained any contraband. It should also be noted that Officer Kuzmeskus seized the truck before Agent Raybourn was able to obtain a warrant for that purpose.

DISCUSSION

It is undisputed that Defendant's truck was seized pursuant to 21 U.S.C. § 881,

which provides, *inter alia,* for forfeiture of vehicles used in connection with the sale and/or transportation of controlled substances. Section 881(b) sets forth the manner in which such property may be seized.[1] Generally, the Attorney General must obtain a warrant pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims. Under subsection (b)(4), however, the Attorney General may seize property subject to forfeiture without process when there is "probable cause to believe that the property has been used or is intended to be used in violation of this subchapter."

■■■ Based upon the facts recited above, there can be little doubt that there was probable cause under the forfeiture statute to believe that Leslie's truck had been used to "facilitate the transportation .... [or] possession .... of a controlled substance." *See, e.g., United States v. Johnson,* 572 F.2d 227 (9th Cir.1978) (standard of probable cause to support forfeiture is less precise and rigorous than that required to obtain a search warrant under ordinary circumstances); *United States v. U.S. Currency Amounting to the Sum of $20,294, More or Less,* 495 F.Supp. 147 (E.D.N.Y.1980) (in a forefeiture proceeding, probable cause is something more than a mere suspicion and generally must be regarded as reasonable under all the circumstances). Leslie's truck was twice observed at known areas of marijuana cultivation. Materials observed in the truck—the map and lime receipt—led to the reasonable inference that the truck was used in the aide of marijuana cultivation. We

note in this regard that contraband need not ever have been in Defendant's truck to sustain forfeiture. It is sufficient that there is a nexus between the vehicle and alleged drug trafficking. *See United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421 (2d Cir.1977.)

On its face, then, subsection (b)(4) would appear to authorize the seizure in question since probable cause existed to believe the truck was an instrumentality of drug trafficking. The existence of probable cause notwithstanding, Defendant argues the government must also show, under subsection (b)(4) that probable cause was contemporaneous with the seizure and that the seizure was accompanied by exigent circumstances.

In support of his position, Defendant relies primarily on *United States v. Pappas,* 613 F.2d 324 (1st Cir.1979) (en banc), noting that the Second Circuit has yet to rule on the issue. *Pappas* held that the probable cause exception under (b)(4) justifies a warrantless seizure "only when the seizure immediately follows the occurrence that gives the federal agents probable cause to believe the automobile is subject to forfeiture under § 881(a) *and* the exigencies of the surrounding circumstances make the requirement of obtaining process unreasonable or unnecessary." *Id.* at 330 (emphasis in original). *See also, United States v. Spetz,* 721 F.2d 1457 (9th Cir.1983); *O'Reilly v. United States,* 486 F.2d 208 (8th Cir.) (Lay, J. dissenting), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973); *United States v. McMichael,* 541 F.Supp. 956 (D.Md.1982).

■■ Weighing against the *Pappas* court's interpretation of the statute, how-

---

1. That subsection states in pertinent part:

    Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when— (1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant.

    (2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter.
    (3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
    (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.

ever, is the plain language of the statute itself as well as its legislative history. As noted above, the wording of subsection (b)(4) requires no more than the existence of probable cause to justify a warrantless seizure. Where, as here, the language of a statute is clear, we must give effect to its plain meaning. *Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 700, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980).

The *Pappas* court concluded that a literal reading of subsection (b)(4) renders the statute internally inconsistent. The court there reasoned that, without the requirement of contemporaneous probable cause and exigent circumstances, "every case requiring process would also qualify for the [ (b)(4) ] exception to the requirement." *United States v. Pappas, supra*, 613 F.2d at 328. This conclusion, however, is predicated upon the assumption that probable cause is a necessary prerequisite for a warrant under the general provision of § 881(b). However, under rule C(3) of the Supplemental Admiralty Rules, once a verified complaint is filed, the clerk is directed to issue a warrant for the arrest of the vessel or other property "forthwith". There need be no showing of probable cause.[2] This interpretation renders the general provision of subsection (6) entirely consistent with the (b)(4) exception.

Moreover, this interpretation is consistent with the legislative history behind the forfeiture statute. Section 881(b) was enacted as part of the Comprehensive Drug Abuse Prevention and Control Act, one of the aims of which was to strengthen existing law enforcement authority in the field of drug abuse. House Report No. 1444, 91st Cong.2d Sess. 1 (1970) *reprinted in* U.S. Code Cong. Ad. News 4566 (1970).[3] In short, there is simply no authority either in the statute itself or in its legislative history for the proposition that Congress intended to restrict the authority of law enforcement officers in the manner urged by Defendant.

▪ We must also consider, however, whether the seizure in question comports with the requirements of the fourth amendment; for, " 'no Act of Congress can authorize a violation of the Constitution.' " *United States v. Spetz*, 721 F.2d 1457, 1470 (9th Cir.1983) *quoting Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). *See also United States v. Bush*, 647 F.2d 357, 368–9 (3rd Cir.1981) ("Having concluded that the warrantless seizure was authorized by [21 U.S.C. § 881], we must now consider whether that seizure was consistent with the ... Fourth Amendment"). Thus, the seizure will survive scrutiny only if it falls within one of the recognized exceptions to the warrant requirement of the fourth amendment.

▪ In this case, the Government argues that exigent circumstances existed to justify the warrantless seizure of Defendant's truck. It is by now well established that where a vehicle is in transit *and* where law enforcement officers have probable cause to believe that the vehicle contains contraband, a warrantless seizure may be justified. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It is uncontroverted, however, that the law enforcement officers who surveilled and seized the

---

**2.** We recognize some scholars have questioned whether use of maritime seizure procedures in the criminal context is constitutional. *See, e.g., 7A Moore's Federal Practice*, ¶ C.12 at 33 (4th ed. Supp. 1978–79), *cited in United States v. Pappas, supra*, 613 F.2d at 328 n.1. However, that issue has not been raised by the parties, and, therefore, we take no position with respect to that question.

**3.** H.R. Rep. No. 2751, 81st Cong. 2d Sess. (1950) states in part:

Enforcement officers of the Government have found that one of the best ways to strike at commercialized crime is through the pocketbooks of the criminals who engage in it. Vessels, vehicles, and aircraft may be termed the operating tools of dope peddlers, and often represent major capital investments to criminals whose liquid assets, if any, are frequently not accessible to the Government. Seizure and forfeiture of these means of transportation provide an effective brake on the traffic in narcotic drugs. The proposed legislation is intended to provide additional means of combating this nefarious activity.

truck did not have reason to believe that at the time of seizure the truck contained contraband.

The government maintains, however, that the act of driving the truck off the property, together with changing the direction of travel, amount to exigent circumstances sufficient to justify a warrantless seizure. However, absent a showing that the officers had probable cause to believe the truck contained contraband, we do not believe the ordinary operation of a vehicle suffices as an exigent circumstance that justifies a warrantless seizure. Any other conclusion would reduce the automobile exception to a "talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 2035–36, 29 L.Ed.2d 564 (1971).

Accordingly, it is hereby ORDERED that Defendant's Motion to Suppress and for Return of One 1982 Datsun Truck is hereby GRANTED.