## UNITED STATES v. PAPPAS.
### No. 192.

Circuit Court of Appeals, Second Circuit.
April 14, 1943.

Nicholas T. Rogers, of New York City, for appellant Pappas.

Mathias F. Correa, U. S. Atty., of New York City (Clayton D. Hollinger, Asst. U. S. Atty., of New York City, of counsel), for appellee, United States.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Benjamin Goldberg, an employee of the Post Office Department, observed seven packages on April 10, 1942, left for mailing at Station A Post Office in New York City, which looked to him suspicious. All of the packages bore the return address of the Theon Company. He referred the matter to the Post Office Inspectors who, through Inspectors Brown and Bader, discovered that one Harry Geller was the shipping clerk of the Theon Company. Geller stated that he had been in the habit of buying the uncancelled portion of used stamps which had been cut in such a manner as to form one apparently uncancelled stamp. He testified that he bought them at a discount and pocketed the several dollars difference on each occasion although he had collected the full amount of the face value of the stamps from his employer.

The testimony under the first count of the indictment was as follows: On April 10, 1942, Inspectors Brown and Bader took Geller into custody and gave him six single dollars of which they had previously taken down the serial numbers. They then instructed him to proceed to the defendant's place of business and to attempt to make a purchase of spurious stamps. They saw him enter the defendant's place at 40 West 18th Street and after a short time emerge. They then followed him and took from him three of the original six dollars and also some spurious stamps of the face value of $6 for which Geller had paid $2.75. The three men then returned to the defendant's store and were invited by him to make a search. They found two of the original single dollar bills in his safe. The defendant said that Geller had given him $3 as part payment of a debt that the latter owed him, but Geller denied that he owed Pappas anything. The defendant, however, denied that he had sold spurious stamps to Geller. The sixth one dollar bill was not accounted for. Inspectors Brown and Bader testified that at the time they searched the store they had found some spurious stamps, but there was testimony by the father of Pappas that they found nothing.

The twenty-one stamps which Geller bought on April 10th were made up of two pieces and the government claims that each stamp was made up of portions of stamps previously canceled and joined together by Scotch tape. Geller testified that from August, 1941, up through April 7, he had purchased from the defendant about twenty or thirty dollars worth of stamps on five or six occasions. These were ungummed stamps for which he was allowed a discount of 30% to 40%. He testified that the defendant told him that if the stamps should fall off, he should say he had "bought them from a peddler at a discount." When the inspectors were in the defendant's store on April 10, 1942, they found a quantity of other stamps, some fifty in number, which the government's witness Souren testified were canceled stamps which had been cleaned for reuse by a "water chemical treatment."

The principal point urged on appeal is that postage stamps are not obligations of the United States within the purview of Section 268, Title 18 U.S.C.A., for violation of which the defendant was convicted.

An "Obligation of the United States" is defined under Section 261, Title 18 of the U.S.C.A. as follows:

"§ 261. (Criminal Code, section 147) 'Obligation or other security of the United States' defined

"The words 'obligation or other security of the United States' shall be held to mean all bonds, certificates of indebtedness, national bank currency, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, which have been or may be issued under any Act of Congress, and canceled United States stamps."

Section 268, under which the defendant was convicted, reads as follows:

"§ 268. (Criminal Code, section 154.) Dealing in counterfeit securities. Whoever shall buy, sell, exchange, transfer, receive, or deliver any false, forged, counterfeited, or altered obligation or other security of the United States, or circulating note of any banking association organized or acting under the laws thereof, which has been or may hereafter be issued by virtue of any Act of Congress, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000, or imprisoned not more than ten years, or both."

The appellant's contention that postage stamps are not obligations of the United States seems to rest upon the fact that Section 328 of Title 18 U.S.C.A.,[1] enacted

---

[1] "Whoever shall use or attempt to use in payment of postage, any canceled postage stamp, whether the same has been used or not; or shall remove, attempt to remove, or assist in removing, the canceling or defacing marks from any postage stamp, or the superscription from any stamped envelope, or postal card, that has once been used in payment of postage, with the intent to use the same for a like purpose, or to sell or offer to sell the same, or shall knowingly have in possession any such postage stamp, stamped envelope, or postal card, with intent to use the same, or shall knowingly sell or offer to sell any such postage stamp, stamped envelope, or postal card, or use or attempt to use the same in payment of postage; or whoever unlawfully and willfully shall remove from any mail matter any stamp attached thereto in payment of postage; or shall knowingly use

about eight years after the originals of Sections 261 and 268 of Title 18 of the U.S.C.A., deals adequately with a reuse of canceled postage stamps and could hardly have been enacted if already covered by existing statutes. But whatever might be said about the meaning of the word "stamps" in Section 261 as an original proposition, the legislative history of Section 261 as amended in 1938, 52 Stat. 7, shows that it was intended to reach canceled postage stamps.

H.R.1633, 75th Cong., 1st Sess., page 1, states that: "The bill was worked out by representatives of the Treasury and Post Office Department to permit the illustration of United States and foreign postage stamps for philatelic purposes, with due regard to guarding against counterfeiting."

S.R.1159, 75th Cong., 1st Sess., adds: "The bill is designed to permit a legitimate illustration of United States and foreign postage stamps without seriously relaxing the laws against counterfeiting * * *"

Included in the Senate Report was a letter from Mr. Wayne C. Taylor, Acting Secretary of the Treasury, dated May 25, 1937, and printed at page 3 of the Report. He submitted the bill in substantially the form in which it was passed, saying: "Furthermore, the proposed bill amends existing law to include canceled United States postage stamps within the laws relating to obligations and other securities of the United States, and provides for the forfeiture to the United States of articles, devices, and other things, in respect to which there has occurred violation of certain of the criminal laws of the United States relating to obligations and other securities of the United States and foreign governments, etc."

Prior to this Act, illustrations of stamps intended to win the patronage of stamp collectors could not lawfully be made from plates identical with those used by the Government. The change in the law in 1938 which enabled stamp sellers to make black and white illustrations, was accompanied by the insertion by amendment in Section 261 of the words "canceled United States stamps." In view of the legislative background of Section 261, as amended, there can be no doubt that if the defendant with knowledge sold stamps made up of portions of previously canceled stamps joined together he would be guilty of violating Section 268. When he used the clean portions of stamps which had been canceled, put them together and sold each composite product as a single stamp, he would surely be guilty of selling a "false, forged, counterfeited, or altered" canceled stamp.

■ It may be argued that if the defendant joined together parts of two genuine and unused postage stamps, his act would not fall within the prohibitions of the statute and that the judge was, therefore, in error when he charged "that if parts of two different genuine and unused United States postage stamps are joined together to make what appears to be one postage stamp, this would be a false and altered obligation of the United States." But it is unnecessary for us to determine whether a deliberate joinder of parts of two different genuine unused stamps would be an altering within the statute, for if the jury believed the evidence that the defendant sold the composite stamps to Geller, as its verdict shows that it did, it must have believed that he sold canceled stamps. It passes human credulity to suppose that any man would cut several valid uncanceled stamps in two and join the parts of the different stamps together for purposes of sale at a large discount. The only rational explanation of the transaction, if the jury found that the stamps were sold by the defendant to Geller, was that they were made up of portions of canceled stamps. The defendant took no exception to this charge, and while it may have been erroneous, we shall not reverse of our own motion where a correct charge could not conceivably have led to a different result.

■ Defendant's contention that the jury could not infer knowledge that the stamps had been altered with the intent to be passed is again incompatible with any sensible view of the case, and in the circumstances knowledge was plainly a question for the jury.

■ The suggestion that the indictment was not properly returned because the wit-

---

or cause to be used in payment of postage, any postage stamp, postal card, or stamped envelope, issued in pursuance of law, which has already been used for a like purpose; shall, if he be a person employed in the Postal Service, be fined not more than $500, or imprisoned not more than three years, or both; and if he be a person not employed in the Postal Service, shall be fined not more than $500, or imprisoned not more than one year, or both."

ness Geller testified that he was alone with the defendant when the sale of April 10th took place and that he had not been called before the grand jury is without merit. We cannot surmise or investigate what went on before the grand jury. We cannot say that they could not have found an indictment on the testimony of Inspectors Brown and Bader only, nor can we know whether other witnesses were called, nor what they said.

We likewise find no merit in the contention that there was no proof of continuity of possession in the stamps in evidence.

Judgment affirmed.