**UNITED STATES of America**
**v.**
**Peter Joseph TROIANO, Appellant.**
**No. 15678.**

United States Court of Appeals
Third Circuit.

Argued April 18, 1966.

Decided July 22, 1966.

Certiorari Denied Nov. 21, 1966.
See 87 S.Ct. 396.

Michael J. Pugliese, Pittsburgh, Pa., for appellant.

J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

The district court, sitting without a jury, convicted the appellant Troiano and sentenced him to 5 years' imprisonment for knowingly and unlawfully possessing about one million forged and counterfeit four cent United States postage stamps with the intent to use and sell them in violation of section 501 of title 18, United States Code.

On this appeal we consider first whether the district court erred in admitting the counterfeit stamps in evidence, denying the motion of the accused to suppress this evidence as illegally seized. The relevant chain of events began in New York where, according to the testimony, Troiano induced associates to borrow a car for him so that he could deliver what he described merely as "merchandise" to Philadelphia. Before departing for Philadelphia in the borrowed car, Troiano told associates who accompanied him in another vehicle that the "merchandise" was in the borrowed car. Upon arrival in Philadelphia Troiano and his associates parked their cars on the street and went to a hotel, where they made contact with a hotel guest who purported to be a prospective purchaser of the merchandise but was in fact an agent of the United States Secret Service.

In the negotiations which took place in the hotel during the ensuing evening hours, Troiano and his associates disclosed to the prospective purchaser that the trunk of the car driven by Troiano contained a million dollars worth of counterfeit postage stamps. There was much haggling about price and the prospective purchaser expressed concern about the quality of the stamps and insisted upon seeing them and having them examined by his own expert. Accordingly, Troiano surrendered his car keys which the prospective purchaser's "expert", another Secret Service agent, took to the car. The agent unlocked the trunk, satisfied himself by brief inspection that the merchandise was counterfeit stamps and drove the car to the Customs House a few blocks away where a more careful examination of the stamps was made. He then drove the car, still containing the stamps, back to the hotel and returned the keys.

Somewhat later the negotiations collapsed. About 4 A.M. Troiano left the hotel, entered the car and attempted to start it. He was then arrested by Secret Service agents and the car and the stamps were seized. The car was confiscated and duly forfeited as contraband.

Troiano's objection to the use of the stamps as evidence against him is based upon the fact that, acting without a search warrant, the Secret Service agents obtained entry to the locked car containing the stamps by falsely representing themselves to him as prospective purchasers.

▮ The great concern of the law to protect the privacy of the home and the undisturbed possession of other lawful property may dictate rules which deny effect to consent to enter a residence or invade other private property obtained by trickery or misrepresentations. See e. g. Fraternal Order of Eagles, etc. v. United States, 3d Cir., 1932, 57 F.2d 93. But the car in this case and the counterfeit stamps in it were not property the ownership or possession of which the law protects. See Brinegar v. United States, 1949, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879. Quite to the contrary, both the stamps and the car containing them were contraband, subject as such to seizure without warrant and over the possessor's objection. Brinegar v. United States, supra; Carroll v. United States, 1925, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543; Armada v. United States, 5th Cir., 1963, 319 F.2d 793; cert. denied 370 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605. For by statute "[a]ny * * * counterfeit * * * obligation * * * of the United States" is declared a "contraband article". 49 U.S.C. § 781(b) (3). And stamps are "obligations of the United States" within the meaning of this statute. 49 U.S.C. § 787 (f); 18 U.S.C. § 8; United States v. Pappas, 2d Cir., 1943, 134 F.2d 922; Errington v. Hudspeth, 10th Cir., 1940, 110 F.2d 384, 127 A.L.R. 1467, cert. denied 310 U.S. 638, 60 S.Ct. 1087, 84 L.Ed. 1407. The statute also directs that "[a]ny * * * vehicle * * * which * * * is being used" to carry any contraband article "shall be seized and forfeited". 49 U.S.C. § 782.

▮ True, such seizure must be supported by probable cause to believe the vehicle contains contraband.[1] But the representations and admissions of Troiano and his associates gave the agents the best of reasons for believing that the car contained counterfeit stamps. In these circumstances, Troiano's delivery of the car keys with consent to the opening of the trunk and an examination of its contents simplified the agents' task but was not essential to their right to seize the car and stamps

---

1. Although generally the courts discourage searches without warrants, the easy mobility and likelihood of escape which characterize an automobile parked on the public street justify the search of such a vehicle upon adequate probable cause, without delay until a search warrant can be obtained. See Husty v. United States, 1931, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629; United States v. Walker, 4th Cir. 1962, 307 F.2d 250, 252.

without a search warrant. Drummond v. United States, 8th Cir., 1965, 350 F.2d 983; Sirimarco v. United States, 10th Cir., 1963, 315 F.2d 699, cert. denied 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032; United States v. Haith, 4th Cir., 1961, 297 F.2d 65, cert. denied 369 U.S. 804, 82 S.Ct. 643, 7 L.Ed.2d 550. Indeed, as has already been pointed out, the seizure of such contraband is expressly required by statute. 49 U.S.C. §§ 782, 783. The motion to suppress the counterfeit stamps as evidence was properly denied.

The only other substantial question on this appeal concerns the failure of the court to grant a requested continuance of several days' duration to permit defense counsel to have a certain tape recording processed and transcribed in an effort to clarify portions of the recording that were garbled and unintelligible.

The circumstances were these. Certain of the negotiations in the hotel concerning the sale of stamps were secretly monitored by a government agent and recorded on a tape recorder. On the first day of trial, the prosecutor, who planned to call participants in the recorded negotiations as witnesses, advised defense counsel of the recordings and surrendered the tapes to defense counsel for overnight examination. The following day the defense used some of the recorded statements in cross-examining and attempting to impeach a witness.

However, parts of the recording were indistinct and even unintelligible. Accordingly, defense counsel requested a continuance of several days' duration to permit an effort to process and transcribe the tape in the hope that the blurred portions would become intelligible. The court denied the motion.

■ We think this action was a proper exercise of discretion. The government had fully disclosed and surrendered to the defense its complete record of what the witnesses had said. The tapes were no less intelligible to the defense than to the prosecution. Nothing appeared that indicated a probability that the garbled portions of the tape could be

made intelligible. The defendant merely hoped that the recording could be clarified and that if clarified, it might reveal something useful. Moreover, since the tapes themselves would not have been admissible to prove the truth of any statement thus recorded, and the witnesses whose conversations were recorded were available, it is at least very doubtful whether the defense could have derived any benefit from a clarification of the recording. It was not obligatory that the court suspend the trial to permit the defendant to pursue this unpromising and speculative undertaking.

We find no merit in any of the appellant's other contentions.

The conviction and sentence will be affirmed.