UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE 1978 MERCEDES BENZ, FOUR-
DOOR SEDAN, VIN: 116–036–12–
004084, Defendant,

Joseph S. and Patricia Chagra,
Claimants-Appellants.

UNITED STATES of America,
Plaintiff-Appellant,

v.

ONE 1978 MERCEDES BENZ, FOUR-
DOOR SEDAN, VIN: 116–036–12–
004084, Defendant,

Joseph S. and Patricia Chagra,
Claimants-Appellees.

Nos. 82–1132, 82–1316.

United States Court of Appeals,
Fifth Circuit.

Aug. 19, 1983.

Rebecca D. Westfall, Mark M. Greenberg, El Paso, Tex., for U.S.

Richard D. Esper, El Paso, Tex., for Joseph S. and Patricia Chagra.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

CLARK, Chief Judge:

The 1978 Mercedes Benz four-door sedan owned by Joseph and Patricia Chagra was forfeited to the government as a result of its use in the transportation of a sample of cocaine. The Chagras appeal to this court from the district court's judgment forfeiting the vehicle. The government also appeals from the district court's related order which allowed the Chagras to remove a car telephone from the vehicle. We affirm both decisions.

Joseph Chagra conducted several meetings and conversations during 1980 and 1981 with Thomas Prout. The intent of these meetings, according to Prout's trial testimony, was to secure large quantities of cocaine. Prout testified that Chagra was interested in purchasing the drugs. Chagra testified that he felt he was being set up by the government through Prout. However, he went along with Prout's scheme in the hope of arranging a "double bust" to embarrass Prout and the government.

On August 30, 1981, Prout flew to the El Paso International Airport where he met Chagra. The two men then got into Chagra's Mercedes and drove to a warehouse parking lot. They got out of the car, walked a short distance away, and began to discuss the price of the cocaine, the suppliers, and the sample of cocaine that Prout had brought with him. Chagra and Prout again got into the car and drove to a residential area where Prout gave the cocaine sample to Chagra. Chagra placed the sample in the glove compartment and then drove Prout back to the airport.

On December 15, 1981, three and a half months after the meeting in El Paso, DEA agents, acting without a warrant, seized the Mercedes from the parking lot of a business owned by Patricia Chagra. The agents had first gone inside the establishment and informed Mrs. Chagra that they were going to seize the car. The agents told her they would tow away the car if she did not relinquish her keys. She did and the agents removed the car.

On January 12, 1982, the government filed a verified complaint for forfeiture of the vehicle pursuant to 21 U.S.C. § 881(a)(4). The complaint alleged that the car had been used to transport cocaine in violation of 21 U.S.C. § 844. After a non-jury trial, the court ordered the Mercedes Benz, its tools and appurtenances, forfeited to the United States. The Chagras subsequently petitioned the court to allow them to remove a car telephone from the car claiming that it was their personal property and not a tool or appurtenance of the forfeited vehicle. The court allowed the Chagras to remove the phone.

We entertain three issues on this appeal. The Chagras contend that: (1) the forfeiture statute does not authorize the warrantless seizure of property when the event providing probable cause for the seizure occurs months prior to the actual seizure and no exigent circumstances require prompt action, and (2) there was no illegal activity because Chagra did not have the necessary specific intent to commit the underlying offense thus eliminating the nexus between the vehicle and the illegal activity. The government argues that the car telephone is an appurtenance of the vehicle and thus subject to forfeiture because it is intimately related to the vehicle and it is attached in a secure and permanent manner.

## The Belated Seizure

The Chagras' first argument is that the government should have secured a warrant when agents seized the vehicle. The probable cause required to seize the vehicle may have existed in August, but, they assert, it certainly dissipated by December.[1]

Section 881 provides for forfeiture of vehicles used to transport or to facilitate the transportation, receipt, and possession of controlled substances in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970.[2] Section 881(b) authorizes the seizure of property subject to forfeiture under the Act "upon process issued

---

1. The government contends that this issue may not be considered on appeal because it was not adequately presented and preserved in the trial court. We disagree. The Chagras' trial brief, in a footnote, challenged the legality of the seizure.

2. 21 U.S.C. § 881 provides in a relevant part:
(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 \* \* \* \* \* \*

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances and all materials and equipment used or intended for use in their manufacture]. . . .

pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims." That section lists four exceptions to its warrant requirement.[3] To justify its seizure of the Chagras' car, the government relies on the fourth exception, subsection 881(b)(4), which authorizes warrantless seizures when "the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter."

The Chagras claim that the warrantless seizure does not fall within the probable cause exception and, therefore, is in violation of the fourth amendment. They contend that the exception applies only when the seizure immediately follows the occurrence that gives rise to probable cause and the exigencies of the surrounding circumstances make it impractical to obtain process.

Three other circuits have considered the issue and relied upon different modes of analysis.

The First Circuit's view in *United States v. Pappas,* 613 F.2d 324 (1st Cir.1979) (en banc), first urged by Judge Lay's dissent in *O'Reilly v. United States,* 486 F.2d 208 (8th Cir.), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1983), is argued here by the Chagras. In considering a motion to suppress the fruits of a search following a seizure under the forfeiture laws, the First Circuit concluded that the probable cause exception of subparagraph (b)(4) applies only when the seizure so immediately follows the occurrence giving rise to probable cause that the exigencies of the surrounding circumstances make it impractical to obtain process. *Pappas* held that a literal reading of the probable cause exception would vitiate the general warrant requirement. It pointed out that there would be no case in which a warrant, issued upon probable cause, could be obtained that would not at the same time meet the probable cause exception. 613 F.2d at 328.

Judge Levin Campbell's dissent, however, suggested that the majority opinion was incorrect in presuming that probable cause is required for a warrant under the Supplemental Admiralty Rules. *Id.* at 333. Judge Campbell interpreted the statute to allow for warranted and warrantless seizures.

I thus read § 881(b) as simply providing for two alternative means of commencing forfeiture proceedings, the first being in the nature of an attachment pursuant to the admiralty procedure and the second, seizure. The Attorney General may commence the proceeding by filing a verified complaint, in which event process for seizure of the conveyance or property will issue "forthwith" (see Rule C), and the owner may defend in court if he believes the seizure unjustified. Alternatively, the Attorney General may effect a seizure without initiating judicial proceedings but only if he determines there is probable cause. In the latter case, forfeiture proceedings are to be instituted "promptly" thereafter. Given the differences between these two procedures, I think, with all due respect, that the "swallow-up" argument disappears.

*Id.* at 334.[4]

The Third Circuit in *United States v. One 1977 Lincoln Mark V Coupe,* 643 F.2d 154

---

**3.** 21 U.S.C. § 881(b) provides:

Seizure without process may be made when:
(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
(2) The property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;
(3) The Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(4) The Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.
In the event of seizure pursuant to paragraph (3) or (4) of subsection, [forfeiture] proceedings under subsection (d) of this section shall be instituted promptly.

**4.** A later opinion of the First Circuit written by Judge Campbell disapproved of the *en banc Pappas* holding and adhered to the panel opinion in *Pappas* which had decided the seizure on constitutional rather than statutory grounds. *United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 448–51 (1st Cir.1980). The Pontiac

(3rd Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981), expressly adopted Judge Campbell's view. The court found that given "the rather pro forma admiralty warrant procedure and the absence of legislative intent, we believe that an 'exigent circumstances' requirement should not be read into the (b)(4) exception as a matter of statutory construction." *Id.* at 158. The Court, then considering the seizure in fourth amendment terms, found that it was clearly established in the Third Circuit that warrants are not required in forfeiture seizures. The court thus upheld the seizure of an automobile two months after the government had gained probable cause to believe that the automobile had been used to facilitate the transportation or sale of a controlled substance. The court added that because two months

> does not present a very long or completely unexplained delay between the occurrence of events giving rise to probable cause and the seizure, we need not decide whether in certain cases section 881(b)(4) should be read to imply a reasonable time requirement or require an explanation for the delay.

*Id.*

The Third Circuit in another opinion issued on the heels of *Lincoln Mark V* reiterated its adherence to Judge Campbell's view. In addition, the court stated that by following the literal language of the statute, the court was following the clear legislative intent.

> The drafters of the 1970 Act clearly intended to liberalize, not restrict, the existing authority of law enforcement officers to seize property used in contravention of the drug control laws. Thus, to read an exigent circumstances requirement into the statute would be consistent

with neither the plain language nor the legislative history of the Act.

*United States v. Bush,* 647 F.2d 357, 368 (3d Cir.1981). Finding the warrantless seizure not to be contrary to the statute, the court found the seizure met the dictates of the fourth amendment. Recent doctrinal advances, the *Bush* court noted, had not changed the rule from its prior decision in *United States v. Troiano,* 365 F.2d 416 (3rd Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966).[5] First, it found that the "legitimate expectation of privacy" analysis in fourth amendment cases accorded with *Troiano* because, as the Supreme Court held in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the seizure of property in plain view involves no invasion of any reasonable expectation of privacy. *Bush* involved a car seized from a public parking lot; therefore, no reasonable expectation of privacy was invaded. Second, the court noted that the distinction developed between searches and seizures under which the standard for reasonableness in seizures was held to be less stringent than that for searches was not affected. The court concluded that warrantless seizures under the forfeiture statute complied with the fourth amendment.

A slightly different approach reaching much the same result was adopted by the Fourth Circuit in *United States v. Kemp,* 690 F.2d 397 (4th Cir.1982). Kemp used his Cadillac in August, 1977, in connection with the distribution of drugs. The vehicle was not seized by government agents until September, 1979. The government had started looking for the car in June or July of 1979 but were not successful in locating it until September. The key issue in *Kemp* was the attempted suppression of items found in the car at the time of the seizure. The district court granted a motion to suppress finding

Lemans court upheld a warrantless seizure of an automobile in the absence of exigent circumstances on the ground that a seizure for forfeiture purposes is an exception to the fourth amendment warrant requirement. In *Pontiac Lemans,* the First Circuit held that an inadequacy in the process used to secure possession does not defeat the government's ultimate entitlement to the property when that

entitlement is established by untainted evidence. *Id.* at 450–51.

5. In *United States v. Troiano,* 365 F.2d 416 (3rd Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966), that circuit held that law enforcement officers might seize a vehicle without a warrant if they had probable cause to believe that the vehicle was subject to forfeiture.

that the car had been improperly seized because the facts furnishing probable cause were not sufficiently contemporaneous with the seizure. The Fourth Circuit reversed that holding, finding that "contemporaneity" may not be read into the probable cause requirement of section 881(b)(4) if the property seized allegedly "has been used" in violation of the drug laws. 690 F.2d at 400. The court reasoned that since property becomes forfeit the instant it is used in violation of the drug laws, it merely awaits the government's assertion of its right to immediate possession. *Id.* at 401.

The court in *Kemp* stated that section 881 is a seizure and not a search statute; therefore, it does not purport to authorize an intrusion on a legitimate expectation of privacy. The court stated:

> If the Attorney General has probable cause to believe "that the property has been used or is intended to be used in violation of this subchapter," the government may seize the property. If the Attorney General believes that the property "has been used" in violation of the drug laws, that means that he has probable cause to believe that the property belongs to the United States. Once the property "has been used," in violation of the law, its innocence cannot be regained, at least while still owned by the perpetrator of the violation. See *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *Weathersbee v. United States, supra,* 263 F.2d 324. This type of probable cause can never dissipate as probable cause for a search warrant may become stale. Forfeit is forfeit. Therefore, the passage of time between the occurrence of the facts giving rise to probable cause and the occurrence of the seizure is irrelevant.

*Id.* (footnote omitted). The court ruled that Congress did not intend to place a time limitation on this exception to the warrant requirement. It reasoned that the statute could reflect Congress' belief that the fourth amendment permits the warrantless seizure of property subject to forfeiture.

This belief "might be based on the government's superior possessory interest in the property and the private person's concomitant diminished expectation of privacy in the property." *Id.* at 402 n. 6.

We decline to adopt the approach taken by the First Circuit in *Pappas.* Rather, we agree with the Fourth Circuit's approach in *Kemp.*

The government's right to seize a vehicle which falls under the reach of section 881(b)(4) matures at the time of the illegal conduct. *Kemp,* 690 F.2d at 401. The maturity of the forfeiture interest vests the right to possession in the United States. That right is then subject to execution by physical seizure. Under the statute's clear language, no process is required to perfect forfeiture when the property "has been used" in violation of the drug laws. Nor does the statute place any exigent circumstances requirement on the warrantless seizure. Nor does it place any time limitation on the exercise of the right to possession.

We reject the suggestion that such a holding creates an unworkable circularity in the statute. If the Attorney General possesses probable cause to believe that a vehicle has been used in violation of the drug laws, he may effect a seizure. If he lacks probable cause, but believes the vehicle may be forfeitable, he may file a verified complaint pursuant to the maritime rules and effect the seizure pursuant to that process. This reading of the statute does not violate the fourth amendment. It is compatible with the Third Circuit's analysis in *Bush* which compares this seizure to a warrantless arrest with probable cause in a public place. *Bush,* 647 F.2d at 370 (citing *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

 The statute allows a warrantless seizure without exigent circumstances and without time restriction when the Attorney General has probable cause to believe the vehicle was used in violation of the drug control laws.[6] However, even if the seizure

---

**6.** We emphasize that this holding does not go beyond a finding that the existence of probable cause authorizes the government to seize the vehicle. We do not address the impact of such

were illegal, it would not bar the government's right to claim the vehicle through forfeiture proceedings. Improper seizure does not jeopardize the government's right to secure forfeiture if the probable cause to seize the vehicle can be supported with untainted evidence. *United States v. Eighty-Eight Thousand, Five Hundred Dollars,* 671 F.2d 293, 297–98 (8th Cir.1982); *United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 450–51 (1st Cir.1980); *United States v. One Harley-Davidson Motorcycle,* 508 F.2d 351, 351–52 (9th Cir.1974). This position is not contrary to *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). That case holds that an object illegally seized cannot in any way be used either as evidence or as the basis for jurisdiction. Therefore, evidence derived from a search in violation of the fourth amendment must be excluded at a forfeiture proceeding. In the case at bar, all evidence of probable cause was developed independent of the seizure of the vehicle.[7] Thus, even if a warrant were required, the failure to secure it would not bar the forfeiture of the vehicle.

### No Criminal Intent and No Nexus

■ The Chagras next argue that, aside from the warrantless seizure, the forfeiture statute should not apply because Joe Chagra did not have the necessary criminal intent to violate the law and because there must be a substantial connection between the property forfeited and the underlying criminal activity.

For the proposition that the forfeiture statute does not reach an innocent transporter of drugs, the Chagras quote language from the Supreme Court's decision in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1972), where the court stated that the forfeiture statutes reach "virtually any type of property that might be used in the conduct of a criminal enterprise." 94 S.Ct. at 2092. Forfeiture defendants continue to cite this language in their defense but this court has already made clear that the language in *Calero-Toledo* does not absolve drug transporters who claim innocence. In *United States v. One 1975 Ford F100 Pickup Truck,* 558 F.2d 755 (5th Cir.1977), this court stated that in *Calero-Toledo* "the court made clear that *Coin & Currency* did not overrule, *sub silentio,* prior cases upholding the application of forfeiture statutes to innocents. This court has held that good faith or innocence on the part of the owner of property subject to forfeiture is immaterial in a seizure under the narcotics statutes." 558 F.2d at 757.

The Chagras' nexus argument is also misplaced. They rely on a First Circuit case, *United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026 (1st Cir.1980), for the position that a "sufficient nexus" and a

---

seizures on any of the vehicle's contents which may come into the possession of law enforcement officials in connection with the seizure.

7. The First Circuit noted that to hold to the contrary in a case like this would be to "deprive the government of a vehicle whose forfeit character is fully proven by untainted evidence —simply, it appears, to punish the government for failing to get a warrant to which, as the outcome of the forfeiture case shows, it would have been entitled to all along." *United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 451 (1st Cir.1980). That court concluded:

If illegal automobile seizures were a serious social problem, and if other means did not exist for deterring illegal conduct, perhaps such a new twist in the already byzantine law of search and seizure would make sense. As it is, we see little need and no precedent for such a new complexity. Should the po-

lice overreach to the extent of seizing an "innocent" vehicle, the victim will regain his vehicle at the forfeiture proceeding, and should he be able to show that the warrantless seizure was effected in bad faith and caused personal damage, he can bring a damages action against the offending officer. Our colleague's proposal to deprive the government of the vehicle in those cases where its right to possession thereof was fully established at the forfeiture proceeding, would be the classic case of punishing the government, and the larger society, for the assumed procedural bumble of the magistrate where a more finely tuned remedy—a damages remedy—exists to accomplish, in a more coherent manner, the objective of achieving deterrence of unconstitutional police conduct.
*Id.*

"substantial connection" must exist between the use of the vehicle and the illegal transaction. This circuit has rejected the "substantial connection" test finding that a section 881 forfeiture is proper if the vehicle in question "was used 'in any manner' to facilitate the sale or transportation of a controlled substance . . . ." *United States v. 1964 Beechcraft Baron Aircraft,* 691 F.2d 725, 727 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

■■■■ Forfeiture does not require evidence of guilt beyond reasonable doubt, but only probable cause which is a reasonable ground for belief of guilt supported by less than prima facie proof so long as it is more than mere suspicion. *United States v. One 1978 Chevrolet Impala, Etc.,* 614 F.2d 983, 984 (5th Cir.1980). The standard was met here.

### The Telephone

When the government seized the Chagras' car, it also took a car telephone mounted between the front seats of the vehicle. The Chagras petitioned the district court for an order allowing the telephone's removal and return. The district court agreed and the government appeals.

There are three connected components in the car telephone system: an antenna mounted on the trunk lid; the control head, which is the phone itself; and the transmitter which slides into a metal frame bolted to the floor of the trunk. The transmitter is wired into the car's 12-volt electrical system. The telephone equipment is covered under a separate insurance policy apart from the general car insurance policy.

The district judge found that the car telephone was easily identified and removed without damage. He held that as a result, the telephone was not an accessory and title to the telephone did not pass to the government. His analysis properly focused on property law.

Our review starts with the statute. Section 881 authorizes the forfeiture of "all conveyances, including aircraft, vehicles, or vessels . . . ." The statute makes no mention of appurtenances or accessions to such vehicles. However, we find the captions in federal court forfeiture cases commonly refer to the vehicle, "its tools and appurtenances."[8] Unfortunately, these cases offer no analysis on the issue of what may be seized with the vehicle or why. Nor does the legislative history of the Comprehensive Drug Abuse Prevention and Control Act of 1970 mention the fate of appurtenances, accessories or attachments to vehicles in the history's all too limited discussion of the forfeiture provisions. H.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4566, 4623–24.

Common sense indicates that when Congress authorized forfeiture of vehicles used to facilitate the drug trade, it intended that items permanently attached to the vehicle also be forfeited. It is equally apparent that Congress did not intend that every item found in a forfeit vehicle—maps, sunglasses, credit cards, or loose change in the glove compartment—was to become property of the government. This need to distinguish between the vehicle and what would be considered separate personal property inside the vehicle leads us to the law of fixtures.

Historically, the law of fixtures has governed the separation of real property from personalty. 5 Powell on Real Property ¶ 651, at 47 (1981). It determines what passes with the transfer of a dwelling and what remains the property of the transferor. While the analogy of real estate transfers to involuntary or unintended forfeitures is not complete, it is the closest established field of law on which we may draw. Because the fit is imperfect, we limit our use of these precedents to the ordinary concepts of what items would be transferred with a general deed of residential realty. *See* R. Powell, *supra,* at 56–59, 62–63; C. Smith & R. Boyer, Survey of the Law of Property 222–24 (2d ed. 1971).

8. *See, e.g., United States v. One 1972 Mercedes Benz 250, etc., its tools and appurtenances,* 545 F.2d 1233 (9th Cir.1976); *United States v. One 1974 Jeep, etc., its tools and appurtenances,* 536 F.2d 1285 (9th Cir.1976) (emphasis added).

The first question which should be asked is whether the item was affixed to the vehicle at the time of manufacture. If it was, it should be forfeited with the vehicle. Second, if the item was installed in the vehicle after its manufacture, then the question becomes whether it was affixed to the vehicle with the intent that it remain permanently affixed. Intent is to be gauged by where and how the item is affixed to the car; whether it is necessary for the vehicle's operation; whether the item is one customarily installed at the time of manufacture; whether the vehicle owner regularly removes the item; whether it would be difficult to remove the object; whether removal would damage the vehicle; and whether the item has an identity or use separate from its function when attached to or placed in the vehicle. Conflicts in the answers to these inquiries should be balanced by the court to determine whether the item should be forfeited. The court should also give great weight to a final consideration which has no roots in fixture law. If there is any evidence before the court that the item was used in furtherance of the underlying crime—a car telephone or radio used to contact drug buyers or a communications device used to monitor police frequencies or otherwise facilitate transportation—that fact should weigh heavily in the court's decision to forfeit the item as a part of the contraband-condemned vehicle.

Applying these tests to the facts of this case, it becomes apparent that the district court correctly determined that the car telephone was not forfeitable. The control head or telephone is attached with bolts to the car's floor. The transmitter slides into a mounting harness which is bolted to the trunk floor. The antenna is permanently affixed to the lid of the car's trunk. None of the items is necessary for the car's operation. They are not customarily installed at the time of the manufacture of the car. There is nothing in the record that indicates that the Chagras ever removed this equipment from the vehicle. The telephone is easily removable in ten to fifteen minutes. The transmitter is also removable. It is unclear whether the antenna is easily removable. Removal of everything except the antenna could be done without damaging the car. The telephone, transmitter and aerial had an identity and use separate from the seized vehicle in that they formed part of a separate communicating system which could be used in other cars or boats powered with 12-volt batteries and the unit was insured separately from the coverage obtained for this automobile. Finally, there is no evidence that the telephone was used in the furtherance of the underlying crime. The balance certainly tips in favor of the district court's determination that the telephone equipment was not a part of the forfeited vehicle.

AFFIRMED.